838 So.2d 1269 (2003)
F. MILLER & SONS, INC. and Lake Charles Harbor & Terminal District
v.
CALCASIEU PARISH SCHOOL BOARD, Rufus Fruge, Jr., as Director of Calcasieu Parish Sales & Use Tax Department, etc.
No. 2002-C-1680.
Supreme Court of Louisiana.
February 25, 2003.
William T. Fontenot, Russell J. Stutes, Jr., John M. Veron, Scofield, Gerard, Veron, Singletary & Pohorelsky, for Appellant.
Christopher J. Dicharry, Phyllis D. Sims, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarma; Michael H. Schwartzberg, Lake Charles, Robert "Rick" Bryant, District Attorney, Terry J. Manuel, Asst. District Attorney, Michael K. Dees, Lake Charles, for Respondent.
Wayne J. McDougall, John F. Rowley, Chalmette, for Bernard Harbor & Terminal District (Amicus Curiae).
Joel T. Chaisson, Hahnville, Sarah C. Leary, Westwego, for Port of South Louisiana (Amicus Curiae).
Charles G. Tutt, Shreveport, for Caddo-Bosiser Parishes Port Commission (Amicus Curiae).
Robert F. Mulhearn, Jr., Robert R. Ranier, for Livingston Parish School Board, St. Mary Parish Council, Parish of West Baton Rouge (Amicus Curiae).
Dorrell J. Brister, Bradley L. Drell, Alexandria, Gregory B. Upton, Alexandria, for Rapides Parish Sales & Use Tax Dept. (Amicus Curiae).
VICTORY, J.
We granted a writ in this case to determine whether the Lake Charles Harbor & Terminal District, a/k/a the Port of Lake Charles (the "Port"), entered into a valid agency agreement with F. Miller & Sons, Inc. ("Miller"), whereby Miller was the Port's agent for the purpose of purchasing materials for use on a public contract and therefore no sales and use taxes were due on these purchases pursuant to La. R.S. 47:301(8)(c). After reviewing the record and the applicable law, we affirm the judgment of the court of appeal and hold that Miller was acting as agent for the Port, a *1270 tax-exempt governmental entity under La. R.S. 47:301(8)(c), when it made the purchases at issue in this case and therefore is not liable to the Calcasieu Parish School Board for sales and use taxes.

FACTS AND PROCEDURAL HISTORY
Pursuant to the Public Bid Law and La. R.S. 34:308, the Port advertised and put out for bid a construction project for the renovation and repair of the dock at its deepwater port in Calcasieu Parish (the "Project"). The Port's standard bid specifications and contract documents on the Project provided for an express appointment of the contractor as the agent of the Port for purchasing materials and directed that all bidders not include any sales tax in their bid. Miller was awarded the contract with a bid of $3,457,746.00, inclusive of labor and materials.
The pertinent contractual provisions appear at the following sections:
1.39 Supplementary Conditions-The part of the Contract Documents which amends or supplements these General Conditions
. . .
SC 6.15-Taxes
Contractor shall not pay any state or local sales or state or local use taxes on materials and equipment which are affixed and made a part of the real estate of the project or work or which is permanently incorporated into the project or work (hereinafter referred to as "applicable materials and equipment"). All purchases of applicable materials or equipment shall be made by the contractor on behalf of and as the agent of the Lake Charles Harbor & Terminal District (Owner), a political subdivision of the State of Louisiana. No state and local sales and use taxes are owed on applicable materials and equipment under the provisions of Act 1029 of the 1991 Regular Session-Louisiana Revised Statute 47:308(8)(c). Owner will furnish contractor a certificate on a form supplied by the Louisiana Department of Revenue and Taxation and/or local taxing authorities which certified that Owner is not required to pay such state or local sales and use taxes and contractor shall furnish a copy of such certificates to all vendors or suppliers of the applicable materials and equipment. The Owner agrees to indemnify contractor against the payment of any state or local sales taxes which are required to be paid regarding the work or the project or any materials or equipment supplied or purchased by the contractor for the work under the contract. The contractor is referred to Exhibit F-"Addendum to Mutual Settlement Agreement and Release of All Claims" for further information."
The supplemental and amending 6.15 provision ("SC 6.15") was added by the Port's counsel once he determined that the Port could appoint a contractor as agent pursuant to Louisiana law and not pay state or local sales taxes on materials incorporated into the Project, as this would result in a lower overall cost for completion of the Project, to the benefit of the Port and local taxpayers.
Also attached to the contract was an addendum signed by representatives of the Port and the Louisiana Department of Revenue and Taxation on April 29, 1993, which provided in pertinent part:
WHEREAS, the parties hereto desire to enter into an agreement to allow the District (the Port) to convey to its potential contractors and vendors its tax exempt status as to transactions arising from contracts for the construction of District owned facilities as reviewed by the Department.

*1271 NOW, THEREFORE, for and in consideration of the mutual releases, settlements, dismissals, covenants and agreements between the District, and the Department and the mutual benefits accruing to the parties from the execution of this addendum to the Mutual Settlement Agreement and Release of all claims, the parties heretofore mentioned, agree as follows:
1. The District may disclose to its contractors and vendors that based on a review by the Department of its contract specification and documents used by the District for all construction of District owned facilities, all transactions in which the District is vendee or all transactions arising from its contracts for the purpose of constructing facilities of the District wherein the District's contractors, subcontractors or suppliers or other tangibles for incorporation into the District owned facilities are not subject to the imposition of sales tax, pursuant to the provisions of R.S. 47:301(8)(a-c) due to the status of the District as a political subdivision of the State of Louisiana.
Thus, according to the terms of the contract, Miller procured supplies and building materials from various vendors (approximately 12 vendors for major purchases) and used these materials for incorporation into the Project. Miller chose the vendors among those whose materials satisfied the specifications of the contract. However, the Port played a role in the selection of suppliers and subcontractors, as the Port had the right to reject any supplier identified by Miller in its bid, and the Port's consent was required before Miller switched to a different major supplier. When Miller purchased materials or equipment which were to be affixed and made part of the real estate of the Project or which were to be permanently incorporated into the Project, Miller did not pay any taxes on these purchases, providing the vendors with the above documentation and informing them that the purchases were tax exempt as they were being made on behalf of the Port. The Port made monthly payments to Miller based on the work completed in the prior 30-day period, and then made a final payment after the job was completed. Under the terms of the contract, the Port agreed to pay a "unit price" for certain major types of materials. If that material was incorporated into the Project 30 days after purchase by Miller, the "unit price" for that material would be included in Miller's monthly payment. When the material was not incorporated into the Project within 30 days, Miller would request payment of the "unit price" of that material in that month's payment, even though the material was not yet incorporated into the Project. Any of the material for which "unit price" which was left over after completion of the Project was left for the Port to use in the future.
Based on the authorization contained in Art. VI, Sec. 29 of the Louisiana Constitution and La. R.S. 33:2737 for the collection of local sales and use taxes, the Calcasieu Parish School Board (the "School Board") conducted a sales tax audit and on November 16, 1998, assessed Miller $9,146.95 in sales tax, interest, and penalties for its purchases made on behalf of the Port, and on December 7, 1998, assessed Miller another $90,987.91. Under the terms of the Port's indemnity agreement, the Port's in-house counsel then assumed legal representation of both the Port and Miller and the Port paid the taxes under protest and filed suit seeking a refund. Both sides filed cross-motions for summary judgment, with the Port contending that Miller purchased the building materials as its agent, that the Port was the true purchaser, and that the Port was exempt from paying sales tax under La. R.S. 47:301(8)(a-c). *1272 The School Board contended that Miller purchased the materials on its own account and was not entitled to the Port's public body tax exemption. The trial court found in favor of the Port and Miller, ruling that although the main contract did not give the contractor any legal authority to bind the Port to any agreements with the vendors, the supplementary conditions to the contract, SC 6.15, created an agency relationship, and therefore, Miller, as agent for the Port, was exempt from paying sales tax. The Third Circuit affirmed. F. Miller & Sons, Inc. v. Calcasieu Parish School Board, et al., c/w Gravity Drainage District # 4, et al. v. Calcasieu Parish School Board, et al., c/w Gravity Drainage District # 4, et al. v. Calcasieu Parish School Board, et al., Nos. 02-00016, c/w 02-00017 & 02-00018, 817 So.2d 1261 (La.App. 3 Cir. 5/15/02).[1] We granted a writ to determine if the Port and Miller entered into a valid agency agreement under Louisiana law such that Miller, as the Port's agent, would be exempt from the payment of local sales tax under La. R.S. 47:301. Miller v. Calcasieu Parish School Board, 02-1680 (La.10/14/02).

DISCUSSION
La. R.S. 47:302 imposes a sales and use tax upon the sale at retail, the use, the consumption, the distribution, and the *1273 storage for use or consumption in this state of each item of tangible personal property. La. R.S. 47:301(8)(c) provides an exemption from these taxes as follows:
For purposes of the payment of the state sales and use tax and the sales and use tax levied by any political subdivision, "person" shall not include this state, any parish, city and parish, municipality, district, or other political subdivision thereof, or any agency, board, commission, or instrumentality of this state or its political subdivisions.
This statute was enacted in 1991[2] and it was not until 1991 that political subdivisions such as the Port were exempt from paying both state and local sales and use taxes. It is undisputed in this case that the Port, as purchaser of tangible personal property, would be exempt from paying sales and use tax to the School Board. The issue in this case is whether the Port can, and did, validly appoint Miller as its agent for purchasing materials for use on this Project, such that Miller would also be exempt.
In 1989, this Court decided the case of Bill Roberts, Inc. v. McNamara, 539 So.2d 1226 (La.1989), which dealt the liability of a government contractor for the payment of state sales and use taxes. In Bill Roberts, a construction company, which had purchased equipment for use in construction contracts with various government entities, was assessed with state sales taxes for the purchase of these supplies and equipment. The construction company would receive bid forms and purchase orders from the governmental agencies which specifically stated that sales tax was not to be included in the bids or that the agencies were exempt from paying sales tax. When these forms were presented to the wholesalers from whom the supplies were purchased for the projects, the wholesalers did not charge sales tax. The equipment and supplies were usually shipped directly to the project sites. Pursuant *1274 to the contracts, the construction company was responsible for installing the materials. The construction company claimed that it was not liable for sales tax because either: the governmental agencies, which where exempt from the payment of state sales tax pursuant to La. R.S. 47:305.29, were the final consumers of the supplies and the equipment; or, the purchases were made by the construction company as an agent for the tax-exempt governmental agencies. This Court disagreed.
First, relying on earlier cases, we held "the contractor or builder of an immovable has been found to be the ultimate consumer of the building materials that go into constructing the immovable," and, therefore, "the contractor as the purchaser and consumer of the building materials used in construction of the immovable owes a sales tax on the purchase." 539 So.2d at 1229 (citing Claiborne Sales Co. v. Collector of Revenue, 233 La. 1061, 99 So.2d 345 (1957); State v. J. Watts Kearny & Sons, 181 La. 554, 160 So. 77 (1934)).
Next, however, we held that "[a]s agent for the owners, the corporation would be exempt from paying sales tax," and that, therefore, "if the corporation could establish an agency relationship on behalf of the governmental entities, then the corporation would be exempt from taxation." Id. However, the construction company relied solely upon the bid forms and the purchase orders to establish the agency relationship, and this Court held that was insufficient proof. Id.
Thus, applying the law as stated in Bill Roberts to the facts of this case, if Miller can prove that it was the Port's agent for purchasing supplies and equipment used on this public works Project, then it will be exempt from local sales taxes under La. R.S. 47:301(8).
As found by both the trial court and the court of appeal, by virtue of SC 6.15, "the Port and Miller entered into a written contract that expressly states that they were creating an agency relationship." Miller, supra 817 So.2d at 1264. The finding of an agency relationship is a finding of fact which will not be overturned unless clearly wrong. Boulos v. Morrison, 503 So.2d 1, 3 (La.1987).
"A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. C.C. art. 2989. SC 6.15 states in pertinent part: "all purchases of applicable materials or equipment [which are affixed and made a part of the real estate of the project or work or which is permanently incorporated into the project or work] shall be made by the contractor on behalf of an as the agent of the [Port] ..." Thus, this contractual provision authorizes Miller to purchase materials and supplies which will be affixed, permanently incorporated into, or made part of the Project as agent for the Port.
The School Board argues that the facts surrounding the purchases and the other terms of the contract negate any finding of agency in this case. Specifically, the School Board argues that Miller was not acting as agent for the Port because Miller selected the vendors, executed contracts with the vendors in its own name, was the sole party to contract with the vendors, revised and paid invoices from the vendors, bore the risk of loss for the materials after they were delivered to the work site, knew how much the materials costs, and bore the risk of any increased cost of the materials. However, we find that none of these factors negates an agency relationship in this case.
First, the Civil Code provides that "the mandatary may perform all acts that are *1275 incidental to or necessary for the performance of the mandate." La. C.C. art. 2995. Further, "the authority granted to a mandatary to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of his profession or calling, need not be specified." La. C.C. art. 2995. In this case, selecting the vendors, receiving and paying the invoices, and knowing how much the materials cost are all acts that are necessary to the performance of the mandate and are part of Miller's profession and expertise.
Second, the fact that Miller executed the contracts in its own name and was the sole party to the contract, is consistent with the laws of mandate which provide that a mandate can enter into contracts as either a disclosed mandate or an undisclosed mandate. La. C.C. arts. 3016, 3017. However, in this case, while Miller may have signed the contracts in its own name, Miller informed the vendors that it was acting as agent for the Port and that therefore no sales taxes were owed on the purchases.
Third, Miller bore the risk of loss for the materials after they were delivered to the work site by virtue of contractual provisions, Sec. 6.4 and 100-16. However, nothing in the law of agency prohibits a mandatary from undertaking that kind of risk as a negotiated term of a contract.
Finally, the School Board's argument that Miller bore the risk of any increased costs in materials and therefore had to be acting for itself when it purchased the materials is without merit. Because Miller was acting as the Port's mandatary in purchasing the applicable materials and supplies, the vendors could look to the Port for payment in case Miller failed to pay. La. C.C. art. 3020 ("The principal is bound to perform the contract that the mandatory, acting within the limits of his authority, makes with a person.") Of course, if a vendor did so, the Port would look to Miller for repayment under the terms of the contract. Miller's payment bond on the project provided that Miller and the surety "bind themselves, ... to the Owner to pay for labor, materials and equipment furnished for use in the performance of the construction contract ..." William Miller testified that the purpose of the payment bond was to insure that Miller, or its surety, pay the vendors and to protect the Port from having to pay the vendors. The fact that Miller's profit margin would be less if material prices increased the estimated bid costs has no bearing on the issue of whether Miller was acting on behalf of the Port in making the purchases.
The School Board argues that SC 6.15, appointing Miller as the Port's agent for the purchase of certain materials, conflicts with a provision of the contract, Sec. 6.9.1, which states that "[n]othing in the contract documents shall create ... any contractual relationship between [the Port] ... and any subcontractor, supplier or other person or organization...." Therefore, the School Board argues, the agency provision must not be given effect. However, when the provision is read in its entirety, it ends with "except as may otherwise be required by Laws and Regulations." Here, the laws of mandate require that, because Miller is purchasing the materials from the vendors as agent for the Port, the Port and the vendors do have a contractual relationship.
Accordingly, we find that the lower courts' finding that Miller was the Port's agent for purchasing certain materials and supplies for use on the Project was not clearly wrong.
The School Board and amici argue that if the lower courts' decision is allowed to stand, it will effectively create a new tax loophole not intended by the legislature *1276 which will deprive local governmental entities of much needed tax revenues. This argument is erroneous for two reasons.
First, that the legislature did not intend this tax "loophole" is pure speculation. In fact, the Louisiana Department of Revenue, the state agency in charge of the collection and payment of taxes pursuant to Louisiana tax laws, including La. R.S. 47:301(8), clearly intended that governmental entities could appoint government contractors as their agent for the purchase of materials and supplies in order to avoid the payment of sales tax on public construction projects. That department recently adopted regulations recognizing the right of the state and political subdivisions to designate construction contractors as agents for purposes of acquiring construction materials in non-taxable transactions. Amendments to Louisiana Administrative Code 61:I. Taxes Collected and Administered by the Secretary of Revenue, Section 4301.definitions were promulgated by the Department of Revenue and published in the February 20, 2002 Louisiana Register. The stated purpose of these amendments is:
to provide guidance concerning the exclusion from the definition of person for all or some of the purchases made by the entities listed in R.S. 47:301(8).... In some instances, the entities specified in R.S. 47:301(8) making the types of purchases that qualify them for the exclusion from the definition of person may act through an agent or employee in making the purchase. Two common situations when this occurs are purchases made by government contractors and the renting of hotel rooms to government employees. The amendments to this rule list the circumstances under which purchases by immovable property contractors
... are equivalent to direct acquisitions by the entity excluded from the definition of person.
LAC 61:I.4301. The amendment to the rule thus provides:
c. R.S. 47:301(8) provides exclusions from the definition of person for purchases made by certain entities....
i. The two entities granted exclusions from paying state and local sales and use tax on all of their purchases are:
(a) the state of Louisiana, its parishes, its municipalities, its special districts, its political subdivisions, and any other agencies, boards, commissions, or instrumentalities of the state or its political subdivisions;
. . .
d. The exclusion from the definition of person is granted only for purchases made by these entities on their own behalf. Representatives of these entities making purchases for the entity may also be excluded from the definition of person when their purchases are deemed the equivalent of an acquisition by the entity itself. The most common examples of representatives purchasing on behalf of these entities are:
i. Mandataries (agents) purchasing materials or leasing or renting equipment for immovable property construction contracts; and ...
e. The following elements establish an immovable property contractor's purchases as the legal equivalent of a R.S. 47:301(8) entity's purchases so as to exclude the transactions from sales and use tax.... The following criteria assume that the R.S. 47:301(8) entity is an immovable property contractor with an agency agreement with a government department or agency.
i. The government department or agency must acquire title to the property at the time of purchase. Except as *1277 otherwise provided in the contract between the parties, the risk of loss must be with the governmental entity.
ii. There must be a signed agreement authorizing the contractor to act as purchasing agent for the entity. The department's form, Designation of Construction Contractor as Agent of a Governmental Entity, may be used for this purpose, or a custom agreement may be substituted if it includes all terms and conditions listed in the form prepared by the department. The form is available at any department office and through the department's web site at: www.rev. state.la.us. Copies of the signed agreement must be made available to tax authorities and vendors upon request. Purchases by the designated agent will be
recognized as those of the government entity if all parties to the contract strictly follow the terms of the agreement.
LAC 61:I.4301.
The agency agreement in this case meets the above requirements, in that the "custom agreement" between the parties includes all the terms and conditions listed in the form prepared by the department. See State of Louisiana, Department of Revenue, R-1020 (9/00), Designation of Construction Contractor as Agent of a Governmental Entity. Further, although the risk of loss of the property remains with Miller under the express terms of the contract, this is allowed by the amended rule. LAC 61:I.4301(e) ("Except as otherwise provided in the contract between the parties, the risk of loss must be with the governmental entity").
Second, the argument that this tax "loophole" is depriving local governmental entities of much needed tax revenues is misleading, as while one local entity, the School Board, is losing revenue in this case, another local entity, the Port and with it local taxpayers, is gaining revenue as the contract is costing less because sales taxes on certain materials are not owed. No private party is gaining revenue at the expense of a local governmental entity; Miller is not gaining revenue because its bid on the Project did not include the payment of any state or local sales tax on the applicable supplies and materials. Thus, we reject the argument that this is an unintended tax "loophole" at the expense of the local governmental entity.

CONCLUSION
The Port, as a political subdivision of the State of Louisiana, is exempt from the payment of state and local sales and use taxes when it purchases tangible personal property. In this case, the Port entered into a construction contract with Miller for renovation and repair of its deepwater port in Calcasieu Parish, pursuant to which contract Miller provided labor and materials for a fixed contract price, and pursuant to which contract the Port appointed Miller as its agent for the purchase of certain types of materials. As the Port's agent, Miller did not pay sales tax on these materials. We find that the appointment of Miller as the Port's agent was done in accordance with the laws of mandate, and does not create a new, unintended tax loophole. Therefore, we find that Miller, as agent for a tax-exempt governmental agency, is not liable to the School Board for the payment of local sales and use taxes.[3]

*1278 DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
KIMBALL, J., concurs in the result.
NOTES
[1] Prior to the hearing on the cross-motions for summary judgment, two other cases pending in the Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana, involving similar facts and law filed on behalf of Gravity Drainage District No. 4, Ward 3, of Calcasieu Parish Louisiana ("Gravity Drainage District") and Miller were consolidated with 14th JDC No. 98-6599, i.e., this case. Those cases are captioned:

Gravity Drainage District Number 4, Ward 3, of Calcasieu Parish, Louisiana and F. Miller & Sons, Inc. Versus Calcasieu Parish School Board, Rufus R. Fruge, Jr., in his capacity as Director of the Calcasieu Parish Sales & Use Tax Department, and the Calcasieu Parish Sales and Use Tax Department Docket Number 99-8359 on the Docket of the Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana ("14th JDC No. 99-8359"), and
Gravity Drainage District Number 4, Ward 3, of Calcasieu Parish, Louisiana and F. Miller & Sons, Inc. Versus Calcasieu Parish School Board, Rufus R. Fruge, Jr., in his capacity as Director of the Calcasieu Parish Sales & Use Tax Department and the Calcasieu Parish Sales & Use Tax Department, Docket Number XXXX-XXXXXX on the Docket of the Fourteenth Judicial District Court for the Parish of Calcasieu ("14th JDC No.XXXX-XXXXXX").
The cross-motions for summary judgment in the case sub judice, 14th JDC No. 98-6599, were heard on October 15, 2001 and the District Court entered a written judgment granting the motion for summary judgment filed on behalf of Miller and caption of the written judgment identified all three of the consolidated cases; however, the document shows a handwritten entry at the top showing the judge's intention to enter the judgment only in 14th JDC No. 98-6599. Additionally, in her written reasons for judgment, the district court showed only the caption for 14th JDC No. 98-6599.
In response to the judgment, the School Board appealed, and the motion for suspensive appeal contained the consolidated caption and the appeal was treated as three separate appeals, one for each of the three consolidated cases. The cases were docketed as consolidated appeals under Court of Appeal, Third Circuit docket numbers 02 00016-CA, 02 00017-CA, and 01 00018-CA. However, no motions for summary judgment were filed and no judgments were entered in the consolidated cases brought by Miller and Gravity Drainage District in 14th JDC Nos. 99-8355 and XXXX-XXXXXX, but the caption of the court of appeal's decision contains the consolidated caption of all three cases. The School Board filed the writ application regarding the opinion we are rendering today, which application referred to all three consolidated Third Circuit docket numbers (02 00016-CA; 02 00017-CA; 02 00018-CA). However, the only judgment before us today concerns the lower courts' rulings in the case involving Miller and the Port, i.e., 14th JDC No. 6599 and 02 00016-CA.
[2] Under the 1950 version of La. R.S. 47:301(8), the state and political subdivisions could all tax each other, as the definition of "person" in the Revised Statutes of 1950, La. R.S. 47:301(8), provided:

"Person" includes any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate, this state, any parish, city and parish, municipality, district or other political subdivision thereof or any board, agency, instrumentality or other group or combination acting as a unit, and the plural as well as the singular number.
This definition of "person" remained effective until September 1, 1991. However, over the years the legislature restricted the power of the state and political subdivisions to collect sales taxes from each other. The first step that the legislature took in that regard was the enactment of La. R.S. 47:305:29, effective October 1, 1980. That statute took away the power of the state to tax itself and certain specific political subdivisions. In its final version, effective July 16, 1985, the statute read as follows:
The sales and use tax imposed by the state of Louisiana under R.S. 47:302 and R.S. 47:321 shall not apply to purchases by the state or any of its agencies, boards, or commissions, school boards, parish and municipal governing authorities, law enforcement districts, parish hospital service districts, and parish and municipal libraries. [Emphasis added].
Under this statute, all political subdivisions could still collect taxes from each other and from the state, but the state could not tax itself or certain political subdivisions. Beginning in 1986, however, the legislature began to suspend many of the sales tax exceptions, including the exception found in La. R.S. 47:305:29.
In 1991, in order to overcome issues associated with the state imposing sales tax on itself and its political subdivisions, the legislature withdrew altogether the power of the state and all political subdivisions to tax each other and their respective "agencies" and "instrumentalities." La. Acts 1991, No. 1029. It did this by amending the La. R.S. 47:301(8) definition of the term "person" to add paragraph (c).
[3] In arguments not presented to the lower courts, or even to this Court by the parties to the case, the Rapides Parish School Board, as amicus, argues that the appointment of Miller as agent for the Port in purchasing materials and supplies for use on this Project violates the Public Bid Law and public policy considerations and is therefore null and void. We decline to address these arguments as they were not raised in the lower courts.