# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-1051

**CYNTHIA BRIDGES, SEC., LA DEPT. OF REVENUE**

**VERSUS**

**CEPOLK CORPORATION**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 84,051
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Jimmie C. Peters, Judges.

**REVERSED AND RENDERED.**

**Robert R. Rainer**
**Rainer, Anding, Tabot & Mulhearn**
**8480 Bluebonnet Boulevard – Suite D**
**Baton Rouge, LA 70810**
**Telephone: (225) 766-0200**
**COUNSEL FOR:**
   **Plaintiff/Appellant - Cynthia Bridges, Sec., LA Dept. of Revenue**

**Gregory Brian Upton**
**Jonathan D. Stokes**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**Telephone: (318) 445-6471**
**COUNSEL FOR:**
   **Defendant/Appellee - Cepolk Corporation**

**THIBODEAUX, Chief Judge.**

The plaintiff, Cynthia Bridges as Secretary of the Louisiana Department of Revenue ("the Department"), appeals the trial court judgment denying its motion for summary judgment, and granting the cross-motion for summary judgment filed by the defendant taxpayer, Cepolk Corporation ("Cepolk"). Finding that the Department proved that the movable items purchased by Cepolk were subject to sales and use tax, and that Cepolk did not meet its burden of proving an exemption to the taxes, we reverse the judgment in favor of Cepolk and grant summary judgment to the Department.

## I.

## ISSUES

We must decide whether the trial court erred:

(1) in finding that Cepolk acted as the Government's agent in purchasing materials installed in the Fort Polk housing; and

(2) in finding that Cepolk purchased the materials for resale to the Government prior to their incorporation into the final product.

## II.

## FACTS AND PROCEDURAL HISTORY

Cepolk is a non-resident, Nevada corporation with contracts to modify or replace the heating, ventilation, and air conditioning (HVAC) systems at the Fort Polk family housing complex in Louisiana. Cepolk asserted that the construction phase of its work was completed in 1994 and that it continued to provide bi-annual maintenance on the water heaters, air conditioning filters, florescent lights, and ad hoc system maintenance when requested. The Department

conducted a sales and use tax audit of Cepolk for the period of March 1, 2006, through December 31, 2008. The audit revealed that Cepolk had failed to pay the sales tax on approximately $4,000,000.00 in purchases of materials and supplies from vendors such as Lowes, The Home Depot, Sherwin-Williams, Solar Supply, Inc., and various other electrical, plumbing, and heating and air conditioning supply companies.

The purchases included small and large items such as lumber, nails, miscellaneous tools, gypsum, duct tape, wire strippers, water heaters, nuts, bolts, batteries, saw kits, sinks, refrigerators, and numerous other items used by the company in fulfilling its contracts. They also included monthly rentals on equipment paid to a financial entity, as well as payments to Home Depot Credit Services.

The Department filed suit to collect $160,573.87 in tax, plus interest of $46,145.60 as of August 20, 2010, and penalties of $4,779.00, for a total of $211,498.47, plus additional interest under La.R.S. 47:1601. Cepolk asserted that it had fulfilled any tax obligations to the State and that the purchases at issue were made by Cepolk as an agent for the United States Government ("Government" or "federal Government").

The Department filed a motion and supplemental motion for summary judgment, attaching four contracts to which Cepolk was a party, and asserting that Cepolk was not a purchasing agent for the Government and was not exempt from the tax under the applicable Louisiana statutes and jurisprudence. Cepolk filed a cross-motion for summary judgment, attaching various contracts and asserting that it was unable to obtain certain others that were incorporated by reference.

The motions were heard on March 4, 2013. The trial court granted summary judgment in favor of Cepolk and dismissed the Department's suit to collect the taxes. For the reasons below, we reverse and render.

## III.

## <u>STANDARD OF REVIEW</u>

The grant or denial of a motion for summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (citations omitted); La.Code Civ.P. art. 966.

## IV.

## <u>LAW AND DISCUSSION</u>

### *Evidence*

As a threshold matter, the contracts entered into evidence at the summary judgment hearing in March of 2013 were the exhibits of the Department, which specifically moved to have all of its exhibits admitted into evidence. Cepolk did not move to have its exhibits entered into evidence at any time during the hearing. We, therefore, cannot consider the exhibits merely attached to Cepolk's cross-motion for summary judgment.[1] Accordingly, our legal analysis will address the four contracts properly admitted into evidence, which are:

---

[1] Prior to August 1, 2012, La.Code Civ.P. art. 966(B) (emphasis added) provided as follows:

> B.  The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions ***on file***, together with the

(1) AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT, referred to as the "U.S. Army Contract" by the Department, and as the "ESPC" (energy savings performance contract) by Cepolk, effective May 22, 1994, between the Director of Contracting-Fort Polk, and the Co-Energy Group. It is undisputed that this contract was assigned to Cepolk. We will refer to it as the "Army Contract."

(2) MASTER SUBCONTRACT AGREEMENT, dated July 15, 2005, between Picerne Construction/FP, LLC as Contractor and Cepolk as Subcontractor. We will refer to this contract as the "Master Subcontract I."

(3) SUBCONTRACT, dated January 1, 2006, between Picerne Military Housing as Manager and Cepolk as Subcontractor. We will refer to it as the "Subcontract."

(4) MASTER SUBCONTRACT AGREEMENT, dated April 24, 2008, between Picerne Construction/FP, LLC as Contractor and Cepolk as Subcontractor. We will refer to this contract as the "Master Subcontract II."

*Applicable Law*

Louisiana Revised Statutes 47:302(A)[2] imposes a tax upon the retail sale[3] and the use,[4] consumption, distribution, and storage of *tangible personal*

---

affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

However, via 2012 La. Acts No. 257, § 1, the Louisiana Legislature amended and restructured Article 966, deleting the words "*on file*" from the above language and redesignating subsection B as La.Code Civ.P. art. 966(B)(2). To emphasize the significance of the deletion of the words "*on file*," the legislature added a subparagraph, designated as E(2), which provided: "Only evidence **admitted** for purposes of the motion for summary judgment **shall** be considered by the court in its ruling on the motion." La.Code Civ.P. art. 966(E)(2) (emphasis added). We note that the four contracts properly admitted into evidence by the Department appear to be the only contracts to which Cepolk was a party.

[2]"There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property[.]" La.R.S. 47:302(A).

[3]"[R]etail sale' or 'sale at retail' means a sale to a consumer or to any other person for any purpose *other than for resale as tangible personal property*[.]" La.R.S. 47:301(10)(a)(i) (emphasis added).

[4]"[U]se' means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the further processing

4

*property*,[5] unless the purchases are specifically excluded or exempt from taxation. "Exemptions from taxation are to be strictly construed against the person claiming the exemption[,] and they must be clearly and affirmatively established." *Bill Roberts, Inc. v. McNamara*, 539 So.2d 1226, 1229 (La.1989). Items of tangible personal property, such as construction materials, are considered corporeal movables, as used in the Louisiana Civil Code, until they are incorporated into an immovable and become a component part of the immovable building or construction. *City of New Orleans v. Baumer Foods, Inc.*, 532 So.2d 1381 (La.1988); *See* La.Civ.Code arts. 471,[6] 472.[7]

Items of tangible personal property that are purchased for resale as items of tangible personal property, for example by dealers, are not taxed upon the original purchase. *See* La.R.S. 47:301(10)(a)(i). However, the dealer must ultimately pay the sales tax when he resells the items. Louisiana Revised Statutes La.R.S 47:314 establishes a presumption that tangible personal property held by a dealer is to be taxed:

> Failure to pay any tax due as provided in this Chapter shall ipso facto, without demand or putting in default, cause the tax, interest, penalties, and costs to become immediately delinquent, and the collector has the authority, on motion in a court of competent jurisdiction,

---

of tangible personal property into articles of tangible personal property for sale." La.R.S. 47:301(16)(d)(i).

[5]"'Tangible personal property' means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses." La.R.S. 47:301(16)(a).

[6]"Corporeal movables are things, whether animate or inanimate, that normally move or can be moved from one place to another." La.Civ.Code art. 471.

[7]"Materials gathered for the erection of a new building or other construction, even though deriving from the demolition of an old one, are movables until their incorporation into the new building or after construction." La.Civ.Code art. 472. "If the materials are entirely new, there should be no question as to their status[.]" Revision Comment (b) of article 472.

to take a rule on the dealer. . . . For the purpose of the enforcement of this Chapter and the collection of the tax levied hereunder, it is presumed that all tangible personal property imported or held in this state by any dealer is to be sold at retail, used or consumed, or stored for use or consumption in this state, or leased or rented within this state, and is subject to the tax herein levied; this presumption shall be prima facie only, and subject to proof furnished to the collector.

On the other hand, contractors who install the items they purchase and provide services and labor, rather than studying the markets for resale of the items, are not considered dealers:

A contractor who buys building material is not one who buys and sells--a trader. He is not a 'dealer,' or one who habitually and constantly, as a business, deals in and sells any given commodity. He does not sell lime and cement and nails and lumber.

His undertaking is to deliver to his obligee some work or edifice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished, but something different has been wrought from their use and union. The contractor has not resold but has consumed the materials.

*State v. J. Watts Kearny & Sons*, 181 La. 554, 160 So. 77, 78-79 (La.1934).

In *Claiborne Sales Co. v. Collector of Revenue*, 233 La. 1061, 99 So.2d 345 (La.1957), the Louisiana Supreme Court found that tile sold to tile contractors, for use in performing tile installation contracts on immovable property, were taxable as retail sales upon purchase by the tile contractors. This is so even though the sales were made in wholesale quantities, sufficient to complete one job or for the tile contractors to keep in stock for future jobs.

In *Bill Roberts, Inc.*, 539 So.2d 1226, the supreme court cited the above cases finding the contractor to be the ultimate consumer of the materials he

installs, and held the contractor performing electrical contracting services for various governmental agencies liable for the sales tax on the contractor's purchases of materials and equipment. The equipment and supplies purchased by the contractor were tangible personal property under La.R.S. 47:301. *Id.*

Similarly, in *Amberg Trucking, Inc. v. Tarver,* 626 So.2d 511 (La.App. 3 Cir. 1993), we held the road contractor who purchased supplies for use on construction contracts with governmental agencies liable for the sales tax on the items.

> Since tangible personal property has been judicially defined as *movable* property, the sale to the owner of the *immovable* is not taxable. *American Sign & Ind. Corp. v. City of Lake Charles*, 320 So.2d 234 (La.App. 3d Cir.1975). *Therefore*, the contractor is the purchaser and consumer of the building materials used in construction and owes a tax on the purchases. *St. John the Baptist P.S.B. v. Marbury-Pattillo C. Co.*, 259 La. 1133, 254 So.2d 607 ([La.]1971).

*Concordia Parish School Bd. v. Russ*, 491 So.2d 1368, 1372-73 (La.App. 3 Cir.), *writ denied*, 496 So.2d 350 (La.1986) (emphasis added).[8]

---

[8] Based upon the preceding cases, in August 2012, the Department promulgated La.Admin.Code 61:I.4372, entitled, "Payment of Sales and Use Taxes by Persons Constructing, Altering, or Repairing Immovable Property." The Rule was promulgated pursuant to La.R.S. 47:1511, giving it the full force and effect of law. The introductory comments above the Rule provide in pertinent part:

> There is a long line of jurisprudence in Louisiana which holds that contractors are users and consumers of tangible personal property, rather than re-sellers. The Louisiana Supreme Court has issued several decisions so holding, including *State v. J. Watts Kearny & Sons*, 181 La. 554, 160 So. 77 (La. 1935); *State v. Owin*, 191 La. 617, 186 So. 46 (La. 1938); *Claiborne Sales Co. v. Collector of Revenue*, 42981 (La. 11/27/57), 99 So.2d 345; *Chicago Bridge & Iron Co. v. Cocreham*, 55769 (La. 6/23/75), 317 So.2d 605; and *Bill Roberts, Inc. v. McNamara*, 88-1776 (La. 3/13/89), 539 So.2d 1226.

> The payment of sales or use taxes on materials purchased or imported for use on immovable property contracts is routine for most contractors. . . . In a minority of cases, however, mostly on transactions for the repair or alteration of immovable property, some service providers and contractors have engaged in the practice of invoicing customers separately for materials used in providing the service, and collecting and remitting sales taxes on the separate materials charges. In such cases, the service providers have not themselves paid sales or use taxes on

their acquisitions of the materials for their use on the real property repair or alteration projects, but have instead treated the materials as purchases of tangible personal property for resale.

In some cases, contractors invoicing sales taxes on materials used on immovable property contracts have not reflected the true nature of the transactions. Customers have submitted claims to the department and to local sales tax administrators for refund of sales taxes that they have remitted to their service providers pursuant to those invoices. The filing of these claims has placed tax authorities in the position of having to determine, very often, without the benefit of written contracts, the nature of the transactions that occurred between two parties. Tax authorities' payment of such claims has resulted in no sales or use taxes being paid on the materials used in the projects, either as tax paid by the service providers on their purchases or as tax collected and remitted by the service providers. Tax authorities believe that having a presumption concerning the tax liability is necessary in order to protect the public fisc and to provide guidance to service providers and contractors as to the proper methods for the payment of sales and use taxes. Since this Rule imposes a rebuttable presumption, it does not interfere with the parties' freedom to contract in cases where tangible personal property is actually sold to the customer, and not just used in providing a service. The presumption may be overcome by evidence as to the nature of the transaction.

The actual Louisiana Administrative Code Rule, 61:I.4372 (emphasis added), provides as follows:

A. General. The purpose of this Section is to help clarify which party to the transaction is liable for the payment of sales and use taxes on the purchase, use, consumption, distribution, or storage for use or consumption of tangible personal property in this state when such property is used in the construction, alteration, or repair of an immovable property, and such tangible personal property is transferred from the contractor to its customer in an immovable state.

B. Definition. For the purposes of this Section, the term *contractor* means any dealer, as defined in this Chapter, who contracts or undertakes to construct, manage, or supervise the construction, alteration, or repair of any immovable property, such as buildings, houses, roads, levees, pipelines, oil and gas wells (downhole), and industrial facilities. It also includes subcontractors. The term *contractor* shall not include a dealer who fabricates or constructs property that is sold to another person as tangible personal property, provided that the fabricator or constructor of the tangible personal property does not affix that tangible personal property to the buyer's immovable property.

C. Sales of tangible personal property, including materials, supplies, and equipment, made to contractors, or their contractors, subcontractors, or agents, for use in the construction, alteration, or repair of immovable property are presumed to be sales to consumers or users, not sales for resale, and therefore the contractor is liable for the taxes imposed by this Chapter on their purchases or importations of such tangible personal property. This presumption may be rebutted by a showing of credible evidence, such as a writing signed by the contractor's customer stating that title and/or possession of itemized articles of tangible personal property were transferred to the customer prior to their being made immovable.

If the purchaser can show that it is a designated purchasing agent for an exempt entity, and that title to the items passed to the exempt entity at the time of purchase, the purchaser is also exempt from the levy of sales and use taxes. *F. Miller & Sons, Inc. v. Calcasieu Parish School Bd.*, 02-1680 (La. 2/25/03), 838 So.2d 1269; La.Admin.Code 61:I.4301. Under La.R.S. 47:301(10)(g) (emphasis added), a government contractor can be exempt from sales tax if it can show that its purchases of corporeal movable property were "intended for *future sale* to the United States government or its agencies, when title to such property is transferred to the United States government or its agencies *prior to the incorporation of that property into a final product*."

## *Contentions of the Parties*

Here, Cepolk asserted that it was exempt from taxation because it purchased all materials on behalf of the Government, and that it resold the movables to the U. S. Army prior to their incorporation into the immovable housing units under La.R.S. 47:301(10)(g). Therefore, the contracts were contracts of sale and not construction contracts subject to the traditional view of contractors.

In its reasons for judgment, the trial court found in the affirmative on all three contentions of Cepolk. In its judgment, the trial court stated that, as a matter of law, the Department did not prove all essential elements of its claims against Cepolk, and, as a matter of law, the Department did not prove that the Louisiana sales and use taxes applied to the purchases at issue. Only the Department appealed, asserting that the trial court erred in each of its findings. Cepolk filed a response, reasserting its motion for summary judgment contentions.

As a threshold matter, the essence of the trial court's ruling "as a matter of law" is based upon its interpretation of the contracts and the applicable statutes and jurisprudence in this case. The trial judge, however, did not address any factual issues raised in the cross-motions for summary judgment. We review a grant or a denial of a motion for summary judgment de novo. *Bonin v. Westport Ins. Corp.*, 05-886 (La. 5/17/06), 930 So.2d 906. That is, there is no deference to the trial judge's legal findings, and we make an independent review of the evidence in determining whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966. *See Marigny v. Allstate Ins. Co.*, 95-952 (La.App. 4 Cir. 1/31/96), 667 So.2d 1229, *writ denied*, 96-693 (La. 4/26/96), 672 So.2d 910. Because this case involves cross-motions for summary judgment, our task is to determine whether either party has established that there are no genuine issues of material fact and whether either party is entitled to judgment as a matter of law. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544.

The parties in this case have vehemently disputed the burden of proof, so much so that Cepolk has filed a motion to strike the Department's arguments on the burden of proof in the Department's reply brief filed in this court. We deny the motion to strike because it is a moot issue. Under our de novo review, we will apply the burden of proof analysis under summary judgment article, La.Code Civ.P. art. 966(C)(2),[9] as explained in *Gray v. American Nat'l Property & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839.[10] We will first discuss agency.

---

[9]The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential

**Whether Cepolk Was A Purchasing Agent For The Government**

The Department asserts that there is nothing in the record to suggest that Cepolk was a purchasing agent for the U.S. Government. We agree. In *F. Miller & Sons, Inc.*, 838 So.2d 1269, the contractor claimed an agency relationship with the Port of Lake Charles, a tax exempt entity under La.R.S. 47:301(8)(c). The court discussed the Department's promulgation of amendments to the Louisiana Administrative Code to provide the criteria for a government contractor seeking to prove an agency relationship with an exempt government entity. Since 2002, Louisiana Administrative Code 61:I.4301 (emphasis added) provides in pertinent part:

> e. The following elements establish an immovable property contractor's purchases as the legal equivalent of a R.S. 47:301(8) entity's purchases so as to exclude the transactions from sales and use tax. *Additionally, due to the federal government's immunity from state taxation under The Supremacy Clause, U.S. Const. Art. VI, §2, federal contractors satisfying the following criteria are also entitled to the exclusion from the definition of person.* The following criteria assume that the R.S. 47:301(8) entity is an immovable property contractor with an agency agreement with a government department or agency.

---

to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

[10]In *Gray*, 977 So.2d 839, where the parties filed cross-motions for summary judgment, the Louisiana Supreme Court found that once the plaintiffs successfully pointed out the absence of proof of an essential element of the insurer's defense, a valid UM rejection form, the burden shifted to the insurer to produce factual support sufficient to establish that the insurer would be able to satisfy its evidentiary burden of proof at trial. The court found that if the insurer failed to produce a valid rejection form, there was no genuine issue of material fact, and the plaintiffs would be entitled to summary judgment in their favor, pursuant to La.Code of Civ. Proc. art. 966(C)(2). On the other hand, if the insurer carried its burden of documenting a valid rejection of coverage, then the insurer would be entitled to summary judgment in its favor.

i.   The government department or agency must acquire title to the property at the time of purchase. Except as otherwise provided in the contract between the parties, the risk of loss must be with the governmental entity.

ii.  There must be a signed agreement authorizing the contractor to act as purchasing agent for the entity. The department's form, Designation of Construction Contractor as Agent of a Governmental Entity, may be used for this purpose, or a custom agreement may be substituted if it includes all terms and conditions listed in the form prepared by the department. The form is available at any department office and through the department's web site at: www.rev.state.la.us. Copies of the signed agreement must be made available to tax authorities and vendors upon request. Purchases by the designated agent will be recognized as those of the government entity if all parties to the contract strictly follow the terms of the agreement.

Accordingly, La.Admin.Code 61:I.4301, promulgated in accordance with La.R.S. 47:301 and La.R.S. 47:1511, and amended by the Department of Revenue in February 2002, requires a signed agreement of agency *and* proof that title to the materials passed to governmental agency at the time of purchase.

The Louisiana Supreme Court in *F. Miller & Sons, Inc.* discussed the contractor as the ultimate consumer of construction materials and quoted extensively from *Bill Roberts, Inc.* Ultimately, the court found, "if Miller can prove that it was the Port's agent for purchasing supplies and equipment used on this public works Project, then it will be exempt from local sales tax under La.R.S. 47:301(8)." *F. Miller & Sons, Inc.*, 838 So.2d at 1274. F. Miller & Sons, Inc. was able to prove that it was an agent and mandatary under La.Civ.Code art. 2989[11] and La.Admin.Code 61:I.4301 because its contract with the Port contained the following provisions:

---

[11]"A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La.Civ.Code art. 2989.

1.39 Supplementary Conditions-The part of the Contract Documents which amends or supplements these General Conditions

...

SC 6.15-Taxes

*Contractor shall not pay any state or local sales or state or local use taxes on materials and equipment which are affixed and made a part of the real estate of the project or work or which is permanently incorporated into the project or work* (hereinafter referred to as "applicable materials and equipment"). *All purchases of applicable materials or equipment shall be made by the contractor on behalf of and as the agent of* the Lake Charles Harbor & Terminal District (Owner), a political subdivision of the State of Louisiana. No state and local sales and use taxes are owed on applicable materials and equipment under the provisions of Act 1029 of the 1991 Regular Session-Louisiana Revised Statute 47:308(8)(c). *Owner will furnish contractor a certificate on a form supplied by the Louisiana Department of Revenue and Taxation and/or local taxing authorities which certified that Owner is not required to pay such state or local sales and use taxes* and contractor shall furnish a copy of such certificates to all vendors or suppliers of the applicable materials and equipment. *The Owner agrees to indemnify contractor against the payment of any state or local sales taxes which are required to be paid regarding the work or the project or any materials or equipment supplied or purchased by the contractor for the work under the contract.* The contractor is referred to Exhibit F-"Addendum to Mutual Settlement Agreement and Release of All Claims" for further information."

*F. Miller & Sons, Inc.*, 839 So.2d at 1270 (emphasis added).

Conversely, here, the contracts call for *Cepolk to pay the vendors, pay federal, state and local taxes*, and they require *Cepolk to indemnify the Owner* against Cepolk's nonpayment of the taxes.[12] There was no provision proving an

---

[12]The Army Contract provides on page H-9, paragraph H.20: "Contractor shall retain ownership responsibility for all systems, equipment, and accessories throughout the term of the contract[;]" he is responsible for the loss, and, "All taxes and other charges in connection therewith . . . shall be the responsibility of the Contractor." Page H-11, paragraph H.25, provides that title to the system and equipment vests in the government "upon completion of the term."

agency or mandatary relationship between Cepolk and the Army and no signed agreement of any kind meeting the requirements of La.Admin.Code Title 61:I.4301. Further, the only certificate in evidence had nothing to do with agency or mandate. It instead implicated Cepolk as a liable "dealer" under La.R.S. 47:304 and 47:301(4).

Annette Kotynia, the tax auditor who performed the audit of Cepolk through affidavit, states that she personally reviewed each and every purchase invoice provided to her by Cepolk for its own use in performing two contracts, one with the United States Army, and one as a subcontractor for Picerne Construction/FP, L.L.C. None of the invoices show the Army or the Government as a purchaser of the materials; all invoices show Cepolk as the purchaser. Ms. Kotynia's affidavit attached her schedules showing the value and nature of each invoice. Her schedules were broken down into monthly totals for each month during the audit period. Overall, the purchases total approximately $3,938,000.00 for the audit period.

---

Page I-70, paragraph (b) states that the contract price "includes all applicable Federal, State and Local taxes and duties." In paragraph (h) (emphasis added) the Government agrees to "furnish evidence appropriate to establish exemption from any Federal, State or Local tax *when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption*." However, no such evidence was requested or furnished. Page I-97 requires Cepolk to warrant the materials it furnishes.

Master Subcontract I and Master Subcontract II provide in paragraph 2.5 that Cepolk chooses its own vendors, and in paragraph 4.11 that Cepolk is to pay for all labor and materials promptly. Paragraph 4.5 requires Cepolk to provide releases with its monthly payment applications of all claims or liens for suppliers and anyone providing labor and materials. The Master Subcontracts, paragraph 2.3, make Cepolk responsible for all federal, state, and local licensing, registration, and qualification requirements; require Cepolk to warrant and give proof to Picerne Construction and Polk Communities, LLC, that Cepolk has complied with any Department of Revenue requirements and local conditions and taxing requirements that affect the cost of the project; and require Cepolk to indemnify Contractor and Owner against any loss resulting from Cepolk's breach of these contract provisions.

The Subcontract provides in paragraph 13 that Ceypolk is to pay all taxes in connection with the work. Paragraph 14 requires Cepolk to warrant clear title to all material, equipment, and services. It says nothing about title to such materials passing from Cepolk's vendors to the Government.

14

Ms. Kotynia's affidavit states that the only exemption certificate that Cepolk provided to the vendors, to avoid paying the sales tax upon purchase, was Form LGST-9, entitled "Blanket Exemption Certificate for Purchases by Registered Wholesalers for Resale or Further Processing Under the Louisiana General Sales Tax Act." The Blanket Exemption Certificate (emphasis added) states that the purchaser certifies that the described types of materials and services "are to be used for resale or further processing for resale as tangible personal property by the undersigned registered wholesale dealer and are therefore exempt from the *advance* tax provisions of Revised Statute 47:306B," which has been repealed.[13] The form does not provide an unqualified exemption as it holds the dealer fully liable if the sale is later determined to be subject to tax; nor does it concern in any way an exemption for Cepolk as a purchasing agent for the U.S. Government. In fact, the Blanket Exemption provides a "dealer" registration number indicating that Cepolk must show that it collects and remits the sales tax on the items it resells, pursuant to La.R.S. 47:304 and 47:301(4). Cepolk does not address or defend the Blanket Exemption Certificate, which is the only evidence of an exemption certificate in the record. Further, Cepolk provides no documentation

---

[13]The Blanket Exemption attached to the auditor's affidavit had an effective date of May 3, 2005, to May 3, 2010. Subsection B of R.S. 47:306 was repealed in its entirety by Section 3 of Acts 2007, No. 393, effective January 2009. It had previously provided for the collection by wholesalers of an *advance* sales tax of "a per centum of the sales price." Former La.R.S. 47:306(B)(1)(a). Prior to January 2008, R.S. 47:306(B)(11)(a) authorized the Department to issue an exemption to dealers "whose sales of tangible personal property for a consecutive twelve-month period, exclusive of the tax due on purchases by the dealer, was three million dollars or more, and who timely filed his returns for the period and timely remitted the tax shown due on the returns." Effective January 1, 2008, until its repeal in 2009, Section 1 of Acts 2007, No. 393, rewrote B(11)(a) to reduce the threshold to $500,000.00. However, the exemption carried specific reporting requirements and had nothing to do with establishing a dealer as an agent of the federal Government. Currently, La.R.S. 47:306(A)(1)(a) provides for mandatory monthly or quarterly filings by a dealer, and (A)(6) provides a deduction and credit or refund for "dealers who paid advance sales tax on purchases of tangible personal property for resale during periods when R.S. 47:306(B) was effective."

to show that it collected and remitted any sales tax as a dealer on the materials at issue, even if Cepolk could be considered a dealer instead of a contractor.

Ms. Kotynia's affidavit attached a copy of the appropriate Department Form R-1020, entitled "Designation of Construction Contractor as Agent of a Government Entity and Exemption Certificate." It requires the legal name of the governmental entity designating the named contractor "as its agent for the purpose of making sales tax exempt purchases on behalf of the governmental body." It requires the name of the construction project for which the "purchases of component construction materials, taxable services and leases and rentals of tangible personal property" are exempt. It provides that materials purchased by the designated agent "shall immediately, upon delivery to the agent, become the property of the government entity." The government assumes "direct liability to the vendor for the payment of any property, services, leases, or rentals made by this designated agent." It also requires the signature of a Department of Revenue representative. As previously indicated in *F. Miller & Sons, Inc*. and La.Admin.Code 61:I.4301, while Form R-1020 is not required, a signed agreement containing the substance of the form is required.

In addition to the *absence* of a signed agency agreement exempting the tax, the contracts at issue show that Cepolk is a contractor under *Bill Roberts, Inc.* and its cited cases. Title to the materials did not pass to the government at the time of purchase as required by *F. Miller & Sons, Inc.* and La.Admin.Code 61:I.4301, or at any time prior to their incorporation into the finished product.

Where Cepolk and the Government failed to execute Form R-1020, or any manner of custom agreement including "all terms and conditions listed in the form prepared by the Department," and where all of the contracts are silent with

regard to agency, we find that Cepolk did not have the status of Government agent or mandatary. Moreover, there is no evidence that title to the property purchased by Cepolk passed to the Government at the time of purchase. The agency status of a Government contractor is not assumed; it must be affirmatively established by contract. *See Standard Oil Co. of Louisiana v. Fontenot*, 198 La. 644, 4 So.2d 634 (1941). "The question of whether or not a contractor under the law is an independent one or an agent depends upon the intention of the parties as expressed in the contract." *Id.* at 643. We find no language in the subject contracts to suggest that there was any intention on the part of the Government to name Cepolk as its purchasing agent; nor has Cepolk pointed to such language.

*In Bill Roberts, Inc.*, 539 So.2d at 1229, the contractor contended that it was acting as an agent for governmental agencies in purchasing materials and supplies pursuant to its contracts. The Louisiana Supreme Court articulated as follows:

> As agent for the owners, the corporation [Bill Roberts, Inc.] would be exempt from paying sales tax. The board agreed that if the corporation could establish an agency relationship on behalf of the governmental entities, then the corporation would be exempt from taxation. Exemptions from taxation are to be strictly construed against the person claiming the exemption and they must be clearly and affirmatively established. *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212 (La.App. 1st Cir.), *writ denied*, 458 So.2d 123 (La.1984). In the instant case, the corporation relied solely upon the bid forms and purchase orders to establish an agency relationship between the corporation and the various agencies. The board found the evidence insufficient but left the record open to allow the corporation an opportunity to prove an agency relationship; however, no evidence was ever presented to supplement the record. Accordingly, we agree with the board, as affirmed by the courts below, that the corporation did not prove that its purchases were made as agent for the tax exempt entities.

We find under *Gray*, 977 So.2d 839, and under La.Code Civ.P. art. 966(C)(2), that once the Department factually pointed out that Cepolk could not prove its defense of agency, the burden shifted to Cepolk to provide factual support of its agency relationship, which Cepolk failed to do. Accordingly, the Department is entitled to summary judgment on the issue of agency.

### Whether The Purchases Were Made For Future Sale To The Government Before They Were Incorporated Into The Final Product

Cepolk asserts that the nature of the contract determines the identity of the ultimate consumer, and that the Government is the ultimate consumer, not Cepolk, because Cepolk resold the items to the Government. In particular, Cepolk argues that La.R.S. 47:301(10)(g) exempts it from taxation because the Army Contract transferred title in the items to the Government in their movable form before Cepolk incorporated them into its final product. We disagree. The contracts in evidence are construction contracts, not contracts for sale, and they show that title in the materials and equipment transferred to the Government after the items were installed and incorporated into the housing units.

The Army Contract states in Section C, paragraph 1.1:

> It is the intention of this contract to engage a contractor who will provide equipment and services at the Ft. Polk, Louisiana family housing complex that will modify or replace the heating, ventilation, and air conditioning (HVAC) systems to reduce energy consumption and cost.

The 1994 Army Contract had a term of twenty years, with the design and construction phases to be accomplished in the first thirty-nine months, followed by maintenance and repair. Cepolk argues that because the construction phase was over, the contract was no longer a "construction" contract, but became a

18

contract for sale of the materials. In this contract and the other three contracts, the work and the materials are inextricable from each other, and there is no evidence that Cepolk was selling the uninstalled materials to the Army. Fulfillment of the contracts required the skill and labor of the contractors and subcontractors, and all contracts are contracts for the completion of "work" which includes labor and materials. Further, all four contracts provide that payments for completed work or completed portions of work signal the transfer of ownership of the work and materials to the Government.

In the Army Contract, "system" refers to the HVAC system, and "equipment" is included in all other items required to operate and maintain the system. The contract repeatedly provides that the Contractor has full ownership responsibilities for the system and equipment he furnishes and that title passes to the government "upon completion of the term." Page C-18 Paragraph 10.1 states: "The facilities, equipment, software, and all other items used by the contractor or that is [sic] required to operate and maintain the systems for installations which are provided, and installed under this contract shall become the property of the government at the end of the contract term at no additional cost to the government." If the Government terminates the contract, Cepolk must, at that time, "transfer title and deliver to the Government (1) the fabricated or unfabricated parts, work in progress, completed work, supplies, and other material produced or acquired for the work terminated." Pages I-103-104, paragraph 1.2(b)(6).

Master Subcontract I, dated July 15, 2005, provides under article 2, "Scope of Work," paragraph 2.1, that Picerne Construction will issue directives in the form of Work Orders to Cepolk, and Cepolk will furnish "all of the labor,

materials, supervision, tools, storage, transportation, implements, equipment, fees, utilities, etc., to complete all of the work identified in each Work Order." Paragraph 4.2 provides for Cepolk to submit monthly payment applications on provided forms, to Picerne Construction for the work it has completed in the previous month, including labor, equipment and materials incorporated into the work. In paragraph 4.4, Cepolk is to be paid *for the price of completed and approved work-in-place*. Paragraph 4.4.1 provides that the risk of loss for stored materials remains with Cepolk until the materials are incorporated into the work. Pursuant to paragraph 4.25, the materials and work become the property of Picerne Construction or the Owner/Polk Communities, LLC once Cepolk is paid for the materials and work. Cepolk, however, retains sole responsibility for all materials and work until final acceptance, and Cepolk assumes the risk of loss for stored materials or equipment. Master Subcontract II essentially tracks the language of Master Subcontract I.

The Subcontract, dated January 1, 2006, is between Picerne Military Housing as Manager and Cepolk as Subcontractor. Paragraph 3 states that the "Work" that Cepolk contracted to perform "includes all labor, materials, equipment and services" necessary for performance. The contract provides in exhibit "A" for monthly payment applications to include waivers from suppliers and purchase orders to support the value of the work if requested by the Manager. All payments are based upon completed work. Once that is done, then title passes to the Manager or Owner.

Once the Department pointed out to the court that Cepolk could not prove that it sold the unincorporated movables to the Government, the burden shifted to Cepolk to provide factual support to clearly and affirmatively establish

20

that it was entitled to the exemptions claimed.  *See Gray v. American Nat'l Property & Cas. Co.*, 977 So.2d 839; La.Code Civ.P. art. 966(C)(2); *See also Bill Roberts, Inc.*, 539 So.2d 1226.  Cepolk provided no documentation showing that it sold any or all of the items to the Government before their incorporation into the housing units.  It provided no invoices showing sales to the Government at any time, even though the contracts attached numerous required forms to be used for a multitude of contingencies.  There was no inventory documentation or other evidence that the audited items were actually delivered to the site.  The only document purporting a sale to the Government was the affidavit of Cepolk's president, which was objected to by the Department and never entered into evidence by Cepolk at the hearing as required by La.Code Civ.P. art. 966(B)(2).

Accordingly, we find that the Department has met its burden of proving that Cepolk owed the tax and did not pay the tax, and that Cepolk has not met its burden of proving that it is entitled to any of the exemptions asserted.

V.

**CONCLUSION**

Based upon the foregoing, we find that there is no genuine issue of material fact and that the Department is entitled to summary judgment as a matter of law.  We reverse the grant of summary judgment to Cepolk and grant summary judgment to the Department of Revenue.  Costs of this appeal are assessed to Cepolk Corporation.

**REVERSED AND RENDERED.**