975 So.2d 120 (2008)
Anthony J. BRUSCATO, Plaintiff-Appellant
v.
Mason L. OSWALT, Defendant-Appellee.
No. 42,877-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 2008.
Rehearing Denied February 7, 2008.
*121 Rountree Law Offices, by James A. Rountree, Monroe, LA, for Appellant.
Donald L. Kneipp, Monroe, LA, for Appellees, Mason L. Oswalt and Albert E. Loomis, III.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
Anthony J. Bruscato appeals the trial court's denial of his claims for an accounting and rent he contends is owed by Albert E. Loomis, III, a co-owner with Bruscato of office buildings in which they practice law, and Mason L. Oswalt, an attorney who also practiced there pursuant to an agreement with Loomis. The trial court denied Bruscato's claims upon concluding that there was no lease between Loomis and Oswalt and that Oswalt did not pay rent. Finding no merit to Bruscato's claims, we affirm the trial court's judgment.

FACTS
Bruscato and Loomis began practicing law together in the 1970's. In 1993, their practice included four other attorneys. They shared office space in adjoining buildings located at 2011 and 2015 Hudson Lane in Monroe, Louisiana. Bruscato and Loomis were co-owners of the property. Their partnership ended amicably in July 1993. The reasons are undisputed. Loomis wanted to operate with less overhead, but Bruscato did not want to maintain a heavy caseload without assistance. Rather than partition the co-owned property, they entered an oral agreement by which each would continue his own practice as he wanted and they would share the common overhead expenses on a fifty-fifty basis. Bruscato continued his practice with the associates, and Loomis began a solo practice. As a result, Bruscato's overall expenses increased due to having to meet a payroll for his associates and staff, whereas Loomis's expenses decreased. But at the same time, Bruscato had the benefit of an income stream produced by multiple attorneys, whereas Loomis had only what he produced as a solo practitioner.
Eventually, Loomis found that he had too much work for one attorney. To alleviate his work burden, he brought in a young attorney, Mason Oswalt, whom he had met while handling a case in a rural parish. In April 1996, Loomis and Oswalt reached an agreement by which Oswalt would assist Loomis with his domestic practice by handling overflow work and cases where there was a conflict in Loomis's schedule. They agreed to work certain tort files together and divide the fees. Finally, Oswalt agreed to pay Loomis $2000 per month. Loomis and Oswalt describe *122 this payment as a contribution toward the general overhead expenses of the practice, whereas Bruscato claims it is a payment of rent to which he is entitled to his share as co-owner.
By September 2002, Bruscato's partners had left, and he was a solo practitioner. He began to look at the monthly overhead expenses to determine whether any could be cut. In 2003, Bruscato's office manager, Cheryl Norton, noticed that the office phone bill included a charge for an advertisement for Oswalt's practice. Bruscato asked Oswalt about the charge and claims that Oswalt told him that he was paying rent to Loomis and could charge the advertisement to the office phone bill. Thereafter, Oswalt began paying for the monthly advertisement.
On June 19, 2003, Bruscato delivered a letter to Oswalt's office demanding reimbursement of $3,100 for one-half of the advertisement costs that had been previously paid as part of his shared overhead expenses with Loomis. Bruscato also alleged that Loomis had been renting office space to Oswalt without his consent and demanded that Oswalt vacate the premises. At Loomis's urging, Oswalt reimbursed Bruscato for the advertisement costs, but he did not vacate the premises. Rather, he remained as allowed by his agreement with Loomis, while Loomis attempted to resolve the dispute with Bruscato. Unfortunately, Loomis's and Bruscato's relationship further deteriorated.
On December 10, 2004, Bruscato again wrote to Oswalt. He claimed that he had been "astounded to learn" that Oswalt had been paying Loomis rent and that Loomis would rent space in the building they co-owned without telling him. He alleged that Oswalt and Loomis had a "secret relationship" that resulted in Bruscato subsidizing Oswalt's practice for over eight years. Bruscato proposed discussing a "fair and equitable rental" for the eight years that Oswalt had occupied office space. Finally, he demanded that Oswalt begin paying him $3,000 per month in rent beginning on January 1, 2005, or vacate the premises by December 31, 2004. Oswalt did not respond to Bruscato's letter. Instead, he remained on the premises in accordance with his agreement with Loomis.
On March 24, 2005, Bruscato filed suit against Oswalt seeking his eviction and reimbursement to "fairly and reasonably compensate Petitioner for the space occupied by OSWALT and costs incurred in paying monthly expenses with regard to his overheard in his practice of the law." In response to exceptions of no cause of action and failure to join an indispensable party, Bruscato amended his petition to name Loomis as a defendant. He alleged that Loomis owed him one-half of all the rent he collected from Oswalt. In response, Loomis also filed an exception of no cause of action and a petition to partition their co-owned property.
Loomis and Oswalt argued that the co-owner agreement between Loomis and Bruscato allowed Loomis to enter the arrangement he had with Oswalt for the practice of law. Alternatively, they asserted that even if the arrangement was considered a lease, Loomis was still authorized to freely lease his undivided share. Loomis also asserted affirmative defenses of estoppel and setoff, arguing that if he owed Bruscato rent for Oswalt's occupancy, then Bruscato owed him rent for the attorneys who had occupied office space with his permission.
On November 9, 2005, the trial court signed a judgment granting a motion for involuntary dismissal filed by Oswalt and Loomis in response to the claim for eviction. Prior to the hearing on the eviction, Loomis had sold to Oswalt a one percent *123 interest in his undivided share of the co-owned property. The trial court also denied the exceptions of no cause of action. Later, a motion for summary judgment filed by Bruscato was also denied.
The matter proceeded to trial, with the parties recounting testimony relative to the facts mentioned above and with additional testimony from Tony Tramontana, Carey Underwood, and Scott Wolleson relative to their practice with Bruscato. Tramontana, Underwood, and Wolleson testified about their pay structure while working with Bruscato. Though Bruscato never asked for rent, overheard expenses, which included Bruscato's share of the common expenses he shared with Loomis, were deducted from the gross income generated by all the attorneys before they were paid. Tramontana and Wolleson also recalled that Oswalt had his own letterhead with only his name as the attorney.
In its reasons for judgment, the trial court rejected Bruscato's interpretation of the agreement between Loomis and Oswalt as a lease. Rather, the trial court found Loomis's arrangement with Oswalt to be no different in substance from Bruscato's arrangements with the lawyers who had worked with him over the years. In both instances, the lawyers working with Loomis and Bruscato contributed to the overhead expenses. The trial court found that the defense of setoff asserted by Loomis would be applicable to the situation. Moreover, the trial court determined that Oswalt had no contractual agreement with Bruscato and that Loomis and Oswalt did not have a lease agreement. Rather, they had "a comprehensive arrangement related to how the law practice of Loomis and the law practice of Oswalt would operate to help each other." The monthly payment of $2,000 was a payment toward the operating expenses incurred by Loomis in his law practice, including his share of the common expenses shared with Bruscato. For these reasons, the trial court rendered a judgment in favor of Oswalt and Loomis, dismissing all of Bruscato's claims. This appeal by Bruscato followed.

DISCUSSION
Bruscato raises three assignments of error. He asserts that the trial court erred in finding that Loomis owed no accounting for the money he collected from Oswalt, in concluding there was no agreement between himself and Oswalt, and in determining that Oswalt did not have to pay him anything for his use of the office space.
Bruscato claims he is entitled to rent from Oswalt from January 1, 2005, the date he demanded monthly rent in the amount of $3,000, through July 2006, when Loomis and Oswalt vacated the property. Bruscato bases this claim on the letter of December 10, 2004, in which he demanded that Oswalt either begin paying him rent or vacate the premises. He asserts that by refusing to vacate and remaining on the premises, Oswalt accepted his offer. In support of his argument, Bruscato cites Chaisson v. Chaisson, 29,243 (La.App.2d Cir.2/26/97), 690 So.2d 899, which notes, "An offer may be accepted other than by sacramental words such as `I accept your offer.'" Chaisson, 29,243 p. 4, 690 So.2d at 901.
An offer, acceptance, and consent of the parties must be proven when a claim is based on the existence of a contract. La. C.C. art.1927; Chaisson, supra. When the law does not require specific formalities, an offer and acceptance may be oral, written, or some action or inaction that under the circumstances indicates consent. Id.
*124 In the present case, the evidence does not establish a contract between Bruscato and Oswalt. Consent was not established through offer and acceptance. Oswalt's remaining in his office on the premises was not an action indicative of acceptance under the circumstances. He was already there pursuant to his agreement with Loomis. Therefore, Bruscato could not assume that Oswalt's refusing to vacate indicated acceptance of his offer. The trial court did not err in concluding there was no contract between Bruscato and Oswalt and that Oswalt did not owe rent to Bruscato.
Bruscato complains that neither the trial court nor defendants Loomis and Oswalt have explained why Loomis could collect money from Oswalt for his occupancy but he cannot. This complaint overlooks the agreement between Bruscato and Loomis and hinges on Bruscato's interpretation of the agreement between Loomis and Oswalt as a lease, which the trial court rejected. This also brings us to Bruscato's claim against Loomis for an accounting of the money paid to him by Oswalt.
The use and management of a thing held in indivision is determined by agreement of all the co-owners. La. C.C. art. 801. Loomis and Bruscato agreed to continue their law practices on the co-owned premises as each saw fit and to share the common overhead expenses on a fifty-fifty basis. Pursuant to this agreement, Loomis conducted a solo practice until he found he needed assistance. He then entered an agreement with Oswalt for such assistance in 1996. The innominate contract between Loomis and Oswalt pertained to Loomis's use of his undivided share of the co-owned property as a law business. As agreed, Oswalt handled Loomis's extra work and cases when scheduling conflicts occurred. He and Loomis also shared some tort cases. The testimony of Loomis and Oswalt showed a close working relationship that was mutually beneficial. As part of their arrangement, Oswalt paid Loomis $2,000 per month toward overhead expenses. These included not only the expenses Loomis shared with Bruscato but also expenses, such as money advanced on tort cases, individually incurred by Loomis in his law business. While Bruscato insists this payment is rent, that designation overlooks the full extent of the agreement between Loomis and Oswalt for practicing law and focuses only on the office space occupied by Oswalt.
Nothing in the broad, general agreement between Loomis and Bruscato for use of the co-owned property prohibits Loomis from conducting his law practice with others or using his undivided share for that purpose in any manner of his choosing. He was not required to remain a solo practitioner or to structure his practice in the same manner as Bruscato's. Loomis was free to contract with Oswalt to benefit his law practice, and their agreement is properly considered an adjunct to Loomis's use of his undivided share of the co-owned property. Notably, Loomis's use of his undivided share of the property did not interfere with Bruscato's use of his undivided share. Other than the individual advertisement for which Oswalt reimbursed Bruscato, there is no showing that Oswalt's presence increased the common overhead expenses shared by Loomis and Oswalt.
The trial court's factual findings may not be set aside on appeal unless they are manifestly erroneous or clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). We find no manifest error in the trial court's findings regarding the nature of the agreement between Loomis and Oswalt and the purpose of the payments made by Oswalt. The record *125 viewed in its entirety supports the trial court's judgment.
Though we reject the interpretation of the agreement between Loomis and Oswalt as a lease of office space for the payment of rent by Oswalt, a finding of a lease as alleged by Bruscato would not necessarily entitle him to the accounting and share of the rent he claims is owed by Loomis. A co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from doing likewise. La. C.C. art. 802. In making use of the thing held in indivision, a co-owner may burden his undivided share with a lease to a third party. La. C.C. art. 805. A co-owner and his tenant have the right to possession of the property in indivision so long as the other co-owner is not excluded. Loret v. Fugler, 71 So.2d 384 (La.App. 1st Cir. 1954). If a co-owner or his lessee are in exclusive possession of the thing held in indivision, then the non-possessing co-owner has a claim for his proportionate share of the rent derived from the lease agreement. As explained in Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (La.1955):
In determining the amount due and recoverable by a co-owner out of possession from his co-owner in possession, a clear distinction should be drawn between the personal occupancy, use and enjoyment of property by the possessor and the rents and revenues derived by him therefrom, either from a lease or by his own industry or exploitation. As to the latter, he must account to his co-owner for all rents and revenues he has received because, in obtaining these fruits he acts not only for himself but also as the agent of his co-owner for the latter's just proportion.
See also McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280.
In the present case, neither co-owner possessed the office buildings to the exclusion of the other. Even with the presence of Oswalt, Bruscato remained in possession of his undivided share of the property. Any rents derived by Loomis from the alleged lease burdening his undivided share, which was recognized in his agreement with Bruscato for their co-owner use, would be attributable only to his proportionate share of ownership. In his agreement with Oswalt, Loomis acted on his on own behalf, not as Bruscato's agent, and did not burden the entirety of the co-owned property with the lease. As such, Bruscato would have no claim for half of the rent under La. C.C. art. 798, as he would if Loomis exercised exclusive possession over their co-owned property without a mutual agreement for use under La. C.C. Art. 801, which existed in this case.

CONCLUSION
For the reasons stated, we affirm the trial court's judgment and assess costs of appeal to the appellant, Anthony J. Bruscato.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.
Rehearing denied.