MOORE, J.
liAll sides appeal the judgment in this breach of contract claim arising from a public works project to renovate the Shreveport Fire Maintenance Facility. The dispute stemmed from a subcontract to provide the vehicle exhaust system for removing CO gas from the building while fire trucks are being serviced. For the reasons expressed, we amend the judgment and affirm as amended.

Factual and Procedural Background

In early 2008 the City of Shreveport advertised public bids for the renovation and remodeling of the fire maintenance facility in the old Wray Ford building on Mansfield Road. It ultimately awarded the general contract to A & R General Contractors (not a party to this appeal) for $1.8 million. Bernhard Mechanical Contractors (“Bernhard”) won the mechanical subcontract on the job. Bernhard solicited from the plaintiff, David Akers, d/b/a Air Products Co., a proposal for the ventilation system, including the vehicle exhaust system.
Akers submitted a bid for a system made by Ventaire (it also included a welding exhaust system and fans from other manufacturers) for $40,773. This was the only bid received for the vehicle exhaust system; Bernhard accepted it and asked Akers for product data (called “submit-tals”) to be reviewed by the contractors and by the city’s engineer and architect.
After reviewing the city’s (very detailed) project specifications, on May 7, 2008, Ak-ers gave Bernhard all the product data. The specs stated that all products must be “equal to” those made by another company, Nederman. Akers’s submittal identified his proposal to use Ventaire, not Ned-erman, but he felt it was equal to the latter in every way. Bernhard’s |2manager, August Webber, apparently agreed, and in May he forwarded Akers’s submittal to the general contractor, A & R. In late May, A & R forwarded it “without comment” to the city’s architect and engineer for approval. Initially, the architect, Marc Pre-vot, approved it with only two corrections noted (“coordinate with electrical contractor” and “verify fabric duct color with owner”). Deeming this an approval, Bernhard told Akers to order the Ventaire system on June 17, and Akers did so. Akers’s original bid, and his subsequent invoices to Bernhard, all contained the notation, “Terms Net 30 / 18% APR.” Up to this point, no one had complained about his intention to use Ventaire.
On July 14, the city’s chief of fire maintenance, Henry Simons, noticed that Ven-taire was involved. Simons testified that the specs used Nederman “just for reference,” but emails suggested that he wanted only a Nederman system in the facility. He reported this to the city’s engineer, Fred Newton, and Newton phoned Akers *823 to say he (Newton) had not yet received the submittal, so it was not approved. The architect called a meeting at the jobsite on July 15 to try to work out the problem.
There was much divergent testimony about who was present and what was said at this meeting. Chief Simons stated his view that the Nederman system was superior because the hose had a rubber coating, a Kevlar inner lining, and a certain kind of damper; Akers and Webber, Bern-hard’s manager, maintained that the Ven-taire system was functionally equivalent; documents showed that the city’s architect, Prevot, approved the Ventaire system. After the meeting, Chief Simons went with Akers to Newton’s office to compare the submittal with the specs; he admitted that he lacked lathe technical expertise to make a proper assessment, but he still felt the Ventaire proposal did not meet specs. The city engineer, Newton, then declared that Ventaire lacked “prior approval,” and this is why he never approved the submit-tal (he did review the part of Akers’s proposal that did not involve Ventaire). He agreed, however, that he was ready to “go with it” until Chief Simons and the project manager, Chief Shamburger, insisted on Nederman. He testified that he told Akers not to order the Ventaire system, and in his presence Akers placed a call to Ventaire.
A week later, July 22, Newton officially rejected Akers’s submittal for “no prior approval.” Akers, however, testified that Newton never mentioned the need for pri- or approval until after the July 15 meeting, and ordinarily this was not necessary if the proposal was “equal to” the specs. He admitted he could have stopped the order as late as July 21, but he thought it would be approved. When the Ventaire equipment arrived, Akers did not return it because freight and other costs would have been almost as much as his bid.
Ultimately, the city installed a Neder-man vehicle exhaust system; it used a small portion of Akers’s equipment, authorizing Bernhard to pay Akers $3,861 for it. In October 2008, Akers sent demand letters to Bernhard for the full bid amount, $40,773, plus 18% interest. On October 30, he filed a lien and claim against the project.
Akers filed this suit in October 2009 against Bernhard, A & R and the City of Shreveport. He demanded the full bid amount, 18% interest, and attorney fees under the Public Works ' Act, La. R.S. 38:2246.
A multiplicity of incidental actions ensued. Initially, Bernhard and ]4A & R sought summary judgment to cancel the lien and claim on grounds that Akers did not fully comply with the Public Works Act. The court granted this, dismissing the Public Works Act claim and giving Akers leave of court to amend his petition. In April 2012, Akers did so, recasting his claim as one for an open account or breach of contract, and demanding a total of $61,703 (including finance charges), recognition of the 18% APR stated in his bid and invoices, and attorney fees under La. R.S. 9:2781 (the open accounts statute).
In response to the amended petition, Bernhard filed a third party demand against the city, citing a Department of Revenue certificate issued by the city to Bernhard, granting sales tax exemption for the project.[1] The third party demand asserted, “To the extent that Bernhard is found to be the agent for the City of Shreveport with regard to the materials *824 and/or equipment furnished by [Akers] then the City of Shreveport would be obligated to pay any and all amounts awarded to [Akers].”
The city filed a general denial to the third party demand. It also filed a cross-claim against Bernhard, urging that Bern-hard knew or should have known that the Ventaire system lacked prior approval, and “to the extent the city is found liable to Akers for the amounts due for equipment and materials allegedly furnished by Akers to the project, the city is entitled to contribution from Bernhard * * * due to its negligence in approving Akers’s bid proposal and submitting a purchase order to Akers for the [Ventaire system].”
| Action in the District Court
The matter came to trial in February 2013. The witnesses testified as outlined above. The attorney for Bernhard was present and offered 32 exhibits into evidence, but did not call or cross-examine any witnesses.
The district court ruled from the bench that Akers was credible, while city engineer Newton and Chief Simons had “memory issues.” The court found that Akers’s proposal was accepted all the way up the chain-by Bernhard, Newton and the architect — and that the Ventaire system it proposed was “substantially the same” as the Nederman system described in the specs. The court further found that when Simons and the project manager, Rex Shamburger (who did not testify), heard it was Ven-taire, they complained, and Simons looked for a way out of the deal. The court concluded the city “messed the deal up.” It awarded Akers the bid amount, $40,773, subject to the credit of $3,861, with 18% interest. The court found no open account, so it denied attorney fees. It rendered judgment in favor of Akers and against Bernhard, and then in favor of Bernhard against the city, for the stated amounts.
Akers filed a motion for new trial, reasserting his open account claim. Bernhard filed a motion to amend judgment, urging that on these facts it was merely an agent for the city, and as a disclosed agent it cannot be personally liable for the city’s breach. After a hearing in April 2013, the court again rejected Akers’s claim that he extended credit to Bernhard and the city, and denied Bernhard’s motion to amend judgment. However, the court granted Akers’s motion to the extent of finding that the tax exemption certificate made Bernhard an agent for the city. The court rendered an amended | judgment casting Bernhard and the city for $40,773, subject to the credit of $3,861, with 18% interest; granted Bernhard’s third party demand against the city for the same amount; and denied the city’s cross-claim against Bern-hard, citing the tax exemption certificate.
Bernhard, as first appellant, and the city, as second appellant, filed suspensive appeals; Akers answered both appeals.

Discussion: Validity of Prior Approval

As a threshold matter, we address a subordinate issue raised by the city’s second assignment of error. On March 10, 2008, the city’s architect, Prevot, sent a document entitled “Addendum Number Two (2)” to “all plan holders and bidders.”[2] The city argues this addendum *825 created the need for prior approval of Akers’s bid, which listed a Ventaire system instead of the Nederman system named in the specs; Akers did not request prior approval; hence the city had “every right” to reject the equipment, “even if it was equal to Nederman.” We reject this argument.
The fire maintenance facility is a public work subject to the principles and restrictions of the public bid law, La. R.S. 38:2211 et seq. The law includes prohibitions on “closed specifications,” also known as proprietary or brand-name specifications in public bidding. La. R.S. 38:2212 F, 38:2290. The purpose of the law is to secure free and unrestricted competition among bidders, to eliminate fraud and favoritism, and to avoid 17undue or excessive costs. Louisiana Assoc. Gen’l Contractors, Inc. v. Calcasieu Parish School Bd., 586 So.2d 1354 (La.1991). The owner may not reject a bid from a different supplier if the equipment is functionally equivalent and basically the same as the name-brand equipment in the specs. State Machinery & Equip. Sales v. Livingston Parish Gravity Drainage # 5, 98-1207 (La.App. 1 Cir. 6/25/99), 742 So.2d 26. Any private citizen or other entity may institute a civil action against a public entity to deter the purchase of materials and supplies in violation of R.S. 38:2111 et seq., without eliminating other causes of action provided by existing law. La. R.S. 38:2220.1.
The district court heard extensive testimony comparing the Ventaire and Neder-man systems. We will not belabor this technical and somewhat cumulative evidence, but note that even from the impassive record, the alleged differences appear superficial. We find it particularly telling that the city’s architect, Prevot, approved Akers’s submittal with only minor adjustments, and the city engineer, Newton, testified he was ready to “go with it” had the fire chiefs not raised petulant objections. On this record, we perceive no manifest error: the district court was not plainly wrong to find that Akers’s bid, using the Ventaire product, was substantially the same as the Nederman product, and thus the city had no basis to require prior approval. The city’s argument to the contrary lacks merit.

Allocation of Liability

By its first assignment of error, Bernhard urges the court erred in its legal conclusion that Bernhard was liable to Ak-ers, as the intentional tort was committed by the city, not by Bernhard. By its fourth assignment, |8Bernhard urges the court erred in not rendering judgment solely against the city. In support, it cites the tax exemption certificate, issued by the city, designating Bernhard as a disclosed mandatary; as such, Bernhard argues, only the principal should be liable, La. C.C. art. 3020. It also cites a sales tax case, F. Miller & Sons Inc. v. Calcasieu Parish School Bd., 2002-1680 (La.2/25/03), 838 So.2d 1269, for the holding that the contractor is an agent for the taxing authority and thus exempt from sales taxes.
By its first assignment of error, the city urges the court erred in finding it directly liable to Akers for payment of the invoice even though Bernhard was contractually responsible for the payment of all materials purchased for the project. By its second assignment, the city urges the court erred in dismissing its cross-claim against Bernhard, when Bernhard knew that Ven-taire was not an approved manufacturer and failed to bring this fact to the city’s attention. The city concedes the tax exemption certificate but urges that it does not alter Bernhard’s obligations under the *826 subcontract.[3] The city also shows that in F. Miller & Sons, supra, the court held that “nothing in the law of agency prohibits a mandatary [agent] from undertaking risk or loss * * * by virtue of contractual provisions.”
We have closely examined the tax exemption certificate and find it does not support the district court’s conclusion that it makes the city and Bernhard equally or jointly responsible for a breach of contract. The document begins by stating that the city “does hereby designate the |sfoIlowing contractor [Bernhard] as its agent for the purposes of making sales tax exempt purchases on behalf of the governmental body ” (emphasis added). The final paragraph reiterates: “This designation of agency form, * * * shall serve as evidence of the sales tax exempt status that has been conferred onto the contractor” (emphasis added). In light of the stated and reiterated purpose of conferring tax-exempt status on the contractor’s purchases, we cannot agree that the passage quoted by Bernhard (purchases by the designated contractor “shall be considered as the legal equivalent of purchases directly by the governmental body”) exempts Bernhard from liability for its own subcontracts. The exemption applies to sales and use taxes for the purchase of component construction materials, taxable services and leases and rentals of tangible personal property for the project. It does not make Bernhard the city’s agent for all purposes. The district court erred in finding otherwise.
By contrast, we find the court was correct in its initial allocation of liability. Ak-ers submitted a quote to Bernhard to provide the Ventaire system for a price of $40,773; Bernhard accepted this offer on June 17, 2008, “per your quote 3-13-08 revised.” This agreement plainly obligated Bernhard to pay the stated amount after the system was delivered, even though for other reasons it was not accepted.
Moreover, the court heard an abundance of compelling testimony that the city, through its project managers, Chiefs Simons and Shamburger, and engineer, Newton, ordered Akers and Bernhard to cancel the deal on grounds that the court found pretextual and in direct violation of the open specification law, La. R.S. 38:2212 F. The court was not plainly wrong to [ infind that the city was ultimately respon-, sible for the failure of the contract. The judgment will be amended accordingly.

Validity of Third Party Demand

By three assignments of error, the city urges the district court erred in rendering judgment on Bernhard’s third party demand against the city. By its third assignment, the city contends this demand faded to state a cause of action. It shows that under La. C.C.P. art. 1111, a third party demand can assert only that the third party is derivatively or secondarily liable to the third party plaintiff, such as by a warranty agreement, and may not take the place of a cross-claim to “im-plead” a third party on the theory that the third party is liable to the original plaintiff directly. Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728 (La.1973); State v. Reliance Ins. Co., 487 So.2d 160 (La.App. 4 Cir.), writ denied, 493 So.2d 635 (1986). The city concedes that it did not file an exception of no cause of action in the district court, but shows that it can *827 do so at any time, La. C.C.P. art. 928 B. By its fourth assignment, the city urges the court erred in granting the third party demand against the city for the full amount awarded to Akers, when that claim did not assert that the city was liable to Bernhard for any judgment rendered against it.
The articles of the code of civil procedure are to be liberally construed, La. C.C.P. art. 5051, and every pleading shall be construed as to do substantial justice, La. C.C.P. art. 865. At first glance, Bern-hard’s pleading appears to raise a “flow-through” claim that the city is ultimately liable for any judgment in favor of Akers; however, it also alleged that the city improperly rejected Akers’s proposal, and that “actions or inactions on luthe part of anyone other than plaintiff * * * constituted] a proximate cause” of the loss, an obvious reference to the city’s misconduct. Evidence admitted at trial easily showed that the city, through its engineer and fire chiefs, improperly rejected Akers’s proposal, resulting in a loss to Bernhard; on this record, the pleadings were expanded to include a breach of contract claim against the city. La. C.C.P. art. 1154. Notably, Karam and Reliance Ins. Co., swpm, both arose before the 1983 enactment of the cross-claim, La. C.C.P. arts. 1071. Bern-hard could have raised by cross-claim “any matter arising out of the transaction or occurrence” that is the subject matter of the principal action, and the court would liberally construe it to achieve substantial justice, La. C.C.P. art. 865. Moreover, Bernhard is a private citizen or other entity with a statutory cause of action against a public entity for violations of the provisions of the public bid law, including R.S. 38:2212’s requirement for open specifications. La. 38:2220.1. These assignments lack merit.
By its fifth assignment of error, the city urges Bernhard did not present any evidence in support of its third party demand. The city argues that by becoming a third party plaintiff, Bernhard assumed a burden of proof; however, it took the position of a “bystander” at trial and put on no proof. The city submits this constituted a waiver of its third party demand.
Bernhard’s approach to the trial was unusual and not advisable, but the transcript shows nothing to indicate a judicial confession of waiver, La. C.C. art. 1853, and Bernhard offered into evidence a trial book containing 32 documents. Any contention that Bernhard waived its claim or put on no case is untenable. This assignment lacks merit.

11⅞Quantum

Both Bernhard and the city contest the amount of the award. By its second assignment, Bernhard urges the court erred in ignoring Akers’s failure to mitigate damages. It contends that the city engineer, Newton, told Akers on July 15 to stop the order, but Akers failed to do so; Akers admitted at trial that had he done so, his total cost would have been at most $20,252. Citing the plaintiffs duty to mitigate damages, La. C.C. art.2002, Swoboda v. SMT Properties LLC, 42,746 (La.App. 2 Cir. 1/30/08), 975 So.2d 691, writ denied, 2008-0719 (La.5/30/08), 983 So.2d 899, Bernhard urges the judgment should be reduced to this amount. By its sixth assignment, the city similarly urges that the court erred in not finding that Akers had a duty to mitigate his damages when both the city and Bernhard told him to stop shipment on the Ventaire system.
An obligee must make reasonable efforts to mitigate the damage caused by the obligor’s failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced. La. C.C. art. 2002. *828 The scope of the duty to mitigate depends on the facts of the individual case, and a party is not required to take actions which would likely prove unduly costly or futile. MB Industries LLC v. CNA Ins. Co., 2011-0303 (La.10/25/11), 74 So.3d 1173; Greenhead Gun Club v. City of Shreveport, 40,045 (La.App. 2 Cir. 10/12/05), 914 So.2d 62. The duty is what a “reasonably prudent man” would do in similar circumstances. Id.
Bernhard’s manager, Webber, testified that he always felt the Ventaire proposal satisfied the design specs; the documents show that the architect, 11?Prevot, approved it without objection; and the city engineer, Newton, testified that he was ready to “go with it” until the fire chiefs got involved. With these layers of approval, Akers could have reasonably expected his bid would ultimately be accepted. The district court did not abuse its discretion in finding that his failure to cancel the order on July 15 was not a violation of C.C. art. 2002. In response to the court’s questioning, Akers testified that had he returned the equipment to Ventaire, he “would have had only a $20,252 plus shipping loss.” Akers also testified that he offered to let Bernhard pay the invoice and return the equipment to Ventaire at its (Bernhard’s) expense, and then he (Akers) would refund any credit from Ventaire; apparently, Bernhard declined. If Bernhard considered this option unduly burdensome, Ak-ers could likewise. These assignments of error lack merit.
By its third assignment of error, Bernhard contends the district court erred in not recognizing and awarding proper credits, specifically a credit memo of $494.58 and a freight bill of $868.14, and argues that it should receive credit for these amounts.
Although Bernhard included these documents in the trial book, it offered no testimony to authenticate them or explain how they entitled Bernhard to any credit.[4] Bernhard’s original and reply briefs to this court merely restate the assignment of error and provide no real argument. On this record, the district court did not abuse its discretion in disallowing these 114credits. This assignment of error lacks merit.

Award of Interest

By its fifth assignment of error, Bernhard urges the court erred in awarding Akers 18% interest. Bernhard shows that the interest award was based on Akers’s original invoice, dated July 28, 2008, and faxed to Bernhard on August 22, after the city rejected the bid. Bernhard argues that there is no evidence showing that it ever agreed to this provision; a preprinted statement on a delivery ticket does not create an obligation to pay interest, S.E. Hornsby & Sons Sand & Gravel Co. v. Checkmate Ready Mix Concrete, 390 So.2d 213 (La.App. 3 Cir.1980), and even signing the invoice (which Bernhard did not do) constitutes only acknowledgment of receipt of the materials, not agreement to pay the interest, McJunkins Tire Ctr. v. Barnhill, 488 So.2d 1048 (La.App. 2 Cir.1986).
A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. La. C.C. art. *829 1927. An offer may be accepted other than by sacramental words such as, “I accept your offer.” Bruscato v. Oswalt, 42,877 (La.App. 2 Cir. 1/16/08), 975 So.2d 120.
We have closely examined the record and find offer and acceptance that support the district court’s finding of an agreement. The terms “Net 80/18% APR” first appeared on Akers’s quotation bearing the bid date March 27, 2008; Bernhard’s purchase order, dated May 19, directed Akers to “enter our order” for the described equipment, “as per your quote dated |153-13-08, Revised.” This is very nearly the “sacramental” language of acceptance. Later, on July 15, Bernhard’s manager, Webber, attended the meeting at the job-site to resolve the issues raised by the fire chiefs and the city engineer. These facts indicate that by conduct, Bernhard accepted Akers’s offer in its entirety, and distinguishes the case from McJunkins, S.E. Hornsby & Sons, and other cases in which there was no proof, written or oral, that the buyer agreed to the terms. The record supports the district court’s conclusion. This assignment of error lacks merit.

Open Account

By his first assignment of error, Akers urges the district court erred in failing to rule that the debt owed to him by Bernhard was an open account, entitling him to attorney fees. He cites Frey Plumbing Inc. v. Foster, 2007-1091 (La.2/26/08), 996 So.2d 969, which “expanded” the concept of open account to encompass any situation where “the total cost, unlike a contract, is generally left open or undetermined, although the rate for specific services may be fixed.” He also cites Ormet Primary Aluminum Corp. v. Ballast Techs. Inc., 436 FedAppx. 297 (5 Cir.2011), which held that a written contract to provide stevedoring and storage services created an open account. He argues that his agreement with Bernhard was an extension of credit, as the final price would be determined by the date of payment and the interest accrued. He also asserts that he provided sufficient demand to activate the attorney fee provision, La. R.S. 9:2781 A
Attorney fees are not allowed except where authorized by statute or contract. Sher v. Lafayette Ins. Co., 2007-2441 (La.4/8/08), 988 So.2d 186; Ferrara v. Questar Exploration & Prod. Co., 46,357 (La.App. 2 Cir. |16 6/29/11), 70 So.3d 974, writ denied, 2011-1926 (La.11/14/11), 75 So.3d 943. The special statute, La. R.S. 9:2781, authorizes an award of reasonable attorney fees when any person fails to pay an open account within 30 days after the claimant sends written demand therefor setting forth the amount owed. R.S. 9:2781 A. Subsection D further provides:
D. For the purposes of this Section * * *, “open account” includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of transacting the parties expected future transactions. “Open account” shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.
In Frey Plumbing Co. v. Foster, supra, Ms. Foster hired Frey Plumbing to repair an underground pipe at her house; after the work was completed, Frey sent her a bill for $4,684, which Ms. Foster did not pay; Frey sent her several written demands which went unanswered. Frey filed suit, seeking not only the principal but attorney fees under R.S. 9:2781. Ms. Foster filed a motion for summary judgment on the attorney fee claim, and the district *830 court granted it, finding that because Frey-extended no “line of credit,” submitted one invoice for a single-time payment, and anticipated no additional jobs, there was no open account. The supreme court, however, granted Frey’s writ application, finding a genuine issue of material fact as to whether Ms. Foster’s plumbing bill constituted an open account. After quoting the statute, the court stated (with emphasis added):
This language indicates professional services are included within the ambit of an open account, but it is not mandatory that professional services be rendered for an account to be considered an open account. Indicating professional services are “included” does not limit an open account to a | ^professional service agreement. Any account which fits the definition of an open account, including but not limited to an account for professional services, fits within the ambit of the statute.
In summary, we conclude La. R.S. 9:2781(D) must be applied as written. Under a plain reading of that statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions. To the extent that prior case law has imposed any requirements which are inconsistent with the clear language of La. R.S. 9:2781(D), those cases are overruled.[5]
This statute is penal in nature and must be strictly construed. Frank L. Beier Radio Inc. v. Black Gold Marine Inc., 449 So.2d 1014 (La.1984); Eastern Solutions Inc. v. Al-Fouzan, 2012-464 (La.App. 3 Cir. 11/7/12), 103 So.3d 1190, writ denied, 2012-2623 (La.1/25/13), 105 So.3d 721. In a classic open account arrangement, payment for goods and services is generally exigible or payable upon delivery or performance. Mid-South Analytical Labs Inc. v. Jones, Odom, Spruill & Davis LLP, 40,089 (La.App. 2 Cir. 9/23/05), 912 So.2d 101, writ denied, 2005-2487 (La.4/17/06), 926 So.2d 513.
We have closely analyzed the documents and testimony and conclude the district court did not err in finding Akers’s claim to be one for breach of contract, not open account. In Eastern Solutions v. Al-Fouzan, supra, Eastern Solutions negotiated to sell 61 modular housing units for use as FEMA housing to Al-Fouzan for $745,000. Al-Fouzan drafted the bill of sale; Eastern Solutions signed it and delivered the units. After Al-Fouzan failed to pay, Eastern Solutions sued and obtained judgment. Al-Fouzan |18appealed, urging that transaction was not a sales contract but rather an open account, subject to the shorter prescriptive period of three years. Although the precise issue was prescription, we find the court’s analysis persuasive. After describing the bill of sale, the court stated:
Clearly this is a contract for the sale of movables obligating Eastern Solutions to sell 61 manufactured units to Mr. Al-Fouzan. In return Mr. Al-Fouzan was obligated to .pay $745,000 to Eastern Solutions. Both parties signed the bill of sale supplying the necessary consent to complete the contract of sale. * * * Mr. Al-Fouzan has failed in his obligation to pay the price set forth in the contract. Eastern Solutions’ suit to collect the remaining balance due is a suit for breach of contract. See La. C.C. art. 2549.
*831 At the risk of repetition: Akers sent Bernhard a bid to provide a Ventaire vehicle exhaust system for $40,773; Bernhard accepted by executing the purchase order “as per your quote.” Akers delivered the system and, for various reasons, Bernhard failed to pay. The district court did not abuse its discretion in interpreting this transaction as a contract. The offer, acceptance, and whirl of negotiations fully support this finding. The situation is factually distinguished from the open-ended lease agreement in Ormet Primary Aluminum, supra, and from the customary running account extended by the plumber in Frey Plumbing, supra. We decline to adopt Akers’s suggestion that the provision for 18% interest, with the uncertainty of total payment depending on delay, changed this contract into an open account. Such a construction is overbroad and would transform virtually every construction contract and promissory note into an open account, a result we do not detect in the plain language of R.S. 9:2781.
This assignment of error lacks merit.

Frivolous Appeal

119By his second assignment of error, Akers urges that Bernhard’s appeal is frivolous, entitling Akers to damages and attorney .fees for defending it. He contends that because Bernhard rested its case without presenting any evidence, the appeal lacks any serious legal or factual substance.
An appellate court may award damages, including attorney fees, for frivolous appeal or application for writs. La. C.C.P. art. 2164. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. Hampton v. Greenfield, 618 So.2d 859 (La.1993). An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe in the proposition of law he is advancing. Yamell Ice Cream Co. v. Allen, 38,263 (La.App. 2 Cir. 3/3/04), 867 So.2d 969.
For the reasons already expressed, we do not find that Bernhard rested its case “without presenting any evidence.” Moreover, Bernhard’s appeal raised several serious issues (manifest error, mitigation of damages, interpretation of a tax exemption form, validity of interest charge) and does not strike this court as merely a mechanism to delay paying the judgment. This assignment of error lacks merit.

Conclusion

For the reasons expressed, we amend the judgment to grant judgment on the principal demand in favor of David Akers, d/b/a Air Products Co., against Bernhard Mechanical Contractors, for $40,773.00, subject to a credit of $3,861.00, with 18% contractual APR; and we further grant judgment on the third party demand in favor of Bernhard Mechanical Contractors and against the City of Shreveport, for $40,773.00, subject to a credit of 12o$3,861.00, with 18% contractual APR. The district court’s rulings rejecting the open account claim and dismissing the other incidental actions are affirmed. Each party is to bear its own costs. Pursuant to La. R.S. 13:5112, the City of Shreveport is to pay waived appellate filing fees of $148.00 and waived transcription fees of $752.71.
AMENDED AND AFFIRMED.

. The certificate states: "Purchases for the named project during this period by the designated contractor [Bernhard] shall be considered as the legal equivalent of purchases directly by the governmental body.”

. The addendum states: "The following items shall form part of the contract documents and shall take precedence over the parts of the contract documents issued prior to the date of this addendum. Any changes, which may affect construction or proper installation of materials, equipment or fixtures, not specifically mentioned in this addendum, shall be brought to the attention of the Architect in writing before submission of bid. If such conditions are found later to exist, they must be resolved *825 in an acceptable manner, at no additional cost to the Owner [city].”

. The certificate states: "This agreement does not void or supersede the obligations of any party created under any construction contract related to the project, including any contractual obligation of the construction contractor to submit payment to the vendors of material or services for the project.”

. Notably, the Ventaire credit memo (Ex. B-30) was dated October 11, 2011, six weeks after the district court entered an interim order for Bernhard to ship the equipment back to Ventaire with costs to be equally divided between Bernhard, A & R and the city. From this, it does not appear that Bern-hard is entitled to any credit from Akers.

. The court specifically overruled Acme Window Cleaners Inc. v. Natal Const. Co., 95-0448 (La.App. 4 Cir. 8/23/95), 660 So.2d 926.