Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,416-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROBERT E. REDSTONE, III                    Plaintiff-Appellee

versus

JOHN P. SIPES                              Defendant-Appellant

* * * * *

Appealed from
Shreveport City Court for the
Parish of Caddo, Louisiana
Trial Court No. 2018R08345

Honorable Sheva M. Sims, Judge

* * * * *

JOEY W. HENDRIX                            Counsel for Appellant


GREENWALD LAW FIRM, L.L.C.                 Counsel for Appellee
By:  Joseph W. Greenwald, Jr.


* * * * *

Before MOORE, GARRETT, and THOMPSON, JJ.

**THOMPSON, J.**

This contract dispute matter arises from Shreveport City Court, Caddo Parish, Louisiana, the Honorable Sheva M. Sims presiding. Defendant John P. Sipes ("Sipes") appeals the trial court's judgment granting Plaintiff Robert E. Redstone, III ("Redstone"), damages resulting from Sipes' alleged incomplete and faulty renovation work on a building Redstone owned. For the following reasons, we affirm.

## FACTS

In 2018, Redstone hired Sipes to renovate portions of a building Redstone owned in Shreveport, Louisiana, to be used for his insurance business. The "contract," drafted by Sipes, consisted of one small piece of paper with general items listed and "$25,000" written under Sipes' name. A copy of the contract is reproduced below.

The work consisted of remodeling the interior of the building to create a conference room, two offices, a hallway, and the contested allocation of costs for a bathroom. Redstone was responsible for paying for the items identified.

Sipes began the renovation work in the last week of May 2018. By July 20, 2018, Redstone had paid the total contract price of $25,000 to Sipes, including

Figure 1: Redstone's Exhibit A - the "contract" between the parties

an additional $3,000 as an advance for plumbing work in the bathroom to be performed by Sipes.  By the end of July, the project, now seriously delinquent, was still not finished so Redstone terminated Sipes' services and hired new contractors to complete the renovation.

There was substantial and widespread substandard work performed by Sipes which required replacement and repair before the uncompleted items could be addressed and the project completed.  Multiple photographs depicting the state of the work were introduced in the record.  The new contractors undertook repair and replacement of the defects and then completed the building of the bathroom and completion of the building.  Redstone, already having paid Sipes $28,000 for the project, incurred $17,089.72 in additional costs to repair and complete the project.

On August 22, 2018, Redstone sent a demand letter to Sipes requesting payment for a portion of the damages incurred from hiring new contractors.  This effort was fruitless.  On October 11, 2018, Redstone filed suit against Sipes, asserting that he incurred substantial costs to complete the renovation and that Sipes is liable unto him for, *inter alia*, breach of contract, negligently performing the renovation work, and failing to perform the renovation in a timely manner.  In reply, on October 25, 2018, Sipes filed an answer, admitting that there was a contract between the parties, but asserting that that Sipes had completed 90% of the project before being fired from the job.

A bench trial was held on April 30, 2019.  Redstone sought a total reimbursement of the $17,089.72 incurred to remedy and complete the project.  Submitted into evidence were photographs and videos of Sipes'

work, as well as a list of expenses incurred by Redstone to hire new contractors.[1] Paramount to the appeal before us was the issue of who was responsible for paying for the construction of the bathroom.

Conflicting testimony was provided regarding the scope of the contract and the responsibilities of the parties. Redstone testified that, over the course of the project, Sipes readily began renovating the bathroom. Specifically, after Redstone paid the full contract price, Sipes requested and received an additional $3,000 as an advance for plumbing work. Sipes and his crew spent a considerable amount of time sawing out concrete and used a jackhammer to run the plumbing into Redstone's office. However, Redstone terminated Sipes because of the poor quality of the work done and the delays in completing the project.

Redstone noted that he had planned to relocate his office, so he disconnected telephone and internet connections along the timeline given to him by Sipes for the project to be completed. When the project was continually delayed he and his employees were unable to work and operate Redstone's insurance business for four weeks. No damages were sought or awarded for the business interruption expenses which may have been occasioned to Redstone. The delays and quality of the work were unacceptable to Redstone and were what led to Sipes' termination.

Harold Myers ("Myers"), Sipes' plumber, testified that he was hired by Sipes to perform the plumbing work in the bathroom. Myers stated that he performed the plumbing work at Sipes' direction and was paid by Sipes for his services.

---

[1] *See* Figure 2: list of expenses submitted by Redstone at trial.

Sipes testified that the contract clearly listed "plumber (bath) labor" as expenses covered by Redstone. Sipes stated that the $3,000 advance was to prepare the room to install the plumbing. At trial, Sipes provided receipts which represented the amount he spent on labor and plumbing. Otis Smalley, Sipes' subcontractor, testified that Sipes told him that he (Sipes) was not finishing out the bathroom.

Sipes claimed that he was wrongfully terminated and that, when he left on his vacation, everything was fine. Sipes asserted he could complete the project, remedy any defects, and that in so doing the costs would have been much less than the amount sought by Redstone.

The trial court found that "the contract [was] ambiguous in part" and that Redstone "tendered a total of approximately [$28,000] to the defendant for work to be performed." The court ruled that "the work was faulty and/or not completed in a timely manner" and therefore ruled in favor of Redstone against Sipes for the full and final amount of $17,089.72 incurred to remedy and complete the project, plus court costs. The trial court signed a judgment to that accord on May 30, 2019. This appeal ensued.

## STANDARD OF REVIEW

In the case of ambiguity in a contract, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. *Campbell v. Melton*, 01-2578 (La. 05/14/02), 817 So. 2d 69; *BRP LLC (Delaware) v. MC Louisiana Minerals, LLC*, 50,549 (La. App. 2 Cir. 05/18/16), 196 So. 3d 37.

## DISCUSSION

In his appeal, Sipes asserts two assignments of error:

4

1. **The trial court erred in finding that Sipes was responsible for building the bathroom.**

2. **The trial court erred in awarding $17,089.72.**

In his first assignment of error, Sipes argues that the cost of finishing out the bathroom was not contemplated in the contract. Sipes asserts the contract listed the items Redstone was to pay for, which clearly included "plumber (bath) labor." Citing La. C.C. art. 2046, Sipes states that the contract was clear and explicit, and thus, no further interpretation may be made in search of the parties' intent.

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.

The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter. La. C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049.

Each provision in a contract must be interpreted in light of the other provision so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. A doubtful provision must be interpreted in light

5

of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. C.C. art. 2056.

Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract, unless the written expression of the common intention of the parties is ambiguous. La. C.C. art. 1848; *Campbell*, *supra*; *BRP LLC (Delaware)*, *supra*; *Miller v. Miller*, 44,163 (La. App. 2 Cir. 01/14/09), 1 So. 3d 815. A contract is considered ambiguous on the issue of intent when either it lacks a provision on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. La. C.C. art. 1848; *Campbell*, *supra*; *BRP LLC (Delaware)*, *supra*; *Miller*, *supra*. The issue of whether a contract is ambiguous is one of law. *Slocum-Stevens Ins. Agency, Inc. v. Int'l Risk Consultants, Inc.*, 27,353 (La. App. 2 Cir. 12/11/95), 666 So. 2d 352.

The language of the contract before us, set forth earlier, was drafted by Sipes. At the top of the contract is the word "R.R." Thereafter, is a list of items/terms, Sipes' signature, and the written amount of $25,000. There is no explanation or description of what the project entailed, including any allocation of expenses relative to the bathroom renovation. Under Louisiana law, when there is any doubt about the meaning of an agreement, the court must ascertain the common intention of the parties, rather than adhering to the literal sense of the terms. The trial court's initial inquiry should be

6

whether the words of the contract clearly and explicitly set forth the intent of the parties. This methodology limits the interpretation of a contract to the internal language of the contract itself. *Miller*, *supra*; *Industrial Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Mem'l Trust*, 32,048 (La. App. 2 Cir. 08/29/99), 751 So. 2d 928.

A plain reading of the contract's terms remains unclear and ambiguous as to the parties' intent. When the parties' intent cannot be adequately discerned from the contract itself, the court may then consider evidence as to the facts and circumstances surrounding the parties at the time the contract was made. *Miller*, *supra*; *Industrial Roofing*, *supra.* Determination of the intent of the parties becomes, in part, a question of fact. *BRP LLC (Delaware)*, *supra*; *United Investors Life Ins. Co. v. Alexander*, 27,466 (La. App. 2 Cir. 11/01/95), 662 So.2d 831.

Testimony at trial proved that the initial agreement between the parties was for the remodeling of the interior of the building to create a conference room, two offices, and a hallway. Redstone was required to pay for the items listed in the contract, with the remaining labor costs and materials to be paid by Sipes. However, according to Redstone, during the course of the project there was an oral modification to the contract wherein Sipes was responsible for costs of the work performed on the bathroom. The trial court ruled in favor of Redstone, finding the contract was "ambiguous in part" and that the $3,000 advance was paid to Sipes for work to be performed on the bathroom.

The clearly wrong standard demands great deference to the trier of fact's findings for only the factfinder can be aware of the variations in

7

demeanor and tone of voice that bear so heavily on the listener's understandings and belief in what is said. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Perow v. Lenzly*, 30,833 (La. App. 2 Cir. 08/19/98) 716 So. 2d 519. The trial court in this case made a determination, in light of the testimony and evidence submitted before it, that the contract was ambiguous in part and accepted testimony to make a determination of the final agreement of the parties. In doing so the trial judge was required to review evidence and hear testimony and make credibility determinations regarding those witnesses. *Rosell*, *supra*; *Perow*, *supra*. Here, the trial court found in Redstone's favor. This finding is not clearly erroneous. Therefore, Sipes' first assignment of error is without merit.

In his second assignment of error, Sipes argues the court erred in awarding damages in the amount of $17,089.72 to Redstone to remedy and complete the project. Sipes argues the job was substantially complete when Redstone terminated him. He contends that he could have made the repairs and completed the project for less than the damages sought, and that Redstone should not profit from preventing Sipes from removing the defects. We disagree there is a profit to be made when there are duplicate expenses incurred for the same project. Rather, there are excess expenses which were necessary to remedy and complete the project for which Sipes had already been paid in full in the amount of $28,000.

Redstone testified that there were major defects in Sipes' work and large portions of the project were incomplete. He submitted evidence of the defects. Redstone claims he gave Sipes every effort to complete the job; instead, Sipes went on vacation in addition to other frequent delays. Due to

8

Sipes' delays, Redstone and his employees lost four weeks of work at his insurance business.

An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced. La. C.C. art. 2002. The scope of the duty to mitigate depends on the facts of the individual case, and a party is not required to take actions which would likely prove unduly costly or futile. *MB Indus., LLC v. CNA Ins. Co.*, 11-0303 (La. 10/25/11), 74 So. 3d 1173; *Akers v. Bernhard Mech. Contractors, Inc.*, 48,871 (La. App. 2 Cir. 04/16/14), 137 So. 3d 818. The duty is what a "reasonably prudent man" would do in similar circumstances. *Akers*, *supra*.

Faced with incomplete and defective work with no end date in sight, and the continued unexpected interruption of his business office, Redstone had no other real option than to seek other competent workers to remedy and complete the project. Here, the trial court listened to the testimony and reviewed the evidence, including Redstone's 15 detailed exhibits which comprised the $17,089.72 awarded by the trial court. The testimony and evidence satisfied the trial court that the work was necessary and the costs were reasonable and customary.

When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trial court's findings. *Rosell*, *supra*; *Charles v. Price*, 52,688 (La. App. 2 Cir. 05/22/19), 273 So. 3d 567; *Perow*, *supra*. As such, the trial court had a sufficient factual basis on which to base its award and such an award is not

9

manifestly erroneous. The trial court is in the best position to weigh the credibility of the witnesses and we will not disturb that credibility call. *Rosell*, *supra*; *Price*, *supra*; *Mosley v. Griffin*, 50,478 (La. App. 2 Cir. 02/24/16), 191 So. 3d 16.

In review of the facts, we find that Redstone did attempt to mitigate his damages in accordance with La. C.C. art. 2002, and that the termination of Sipes for faulty and defective work and continual delays was appropriate. Thus, the trial court did not err in awarding Redstone the full and final amount of $17,089.72.

## CONCLUSION

For the reasons set forth above, the trial court's judgment is affirmed. Costs of this appeal are assessed to Sipes.

# Figure 2

ROBERT E. REDSTONE, III.    *    DOCKET NO. 2018R08345

VERSUS    FILED 4-30-2019 SHREVEPORT CITY COURT

JOHN P. SIPES    DEPUTY CLERK    REGULAR DIVISION

## PLAINTIFF'S EXHIBIT BOOK

| TAB: | DESCRIPTION: | AMOUNT: | EXHIBIT: |
|---|---|---|---|
| 1 | Original Contract prepared by John Sipes | | A |
| 2 | Images 1 – 24 taken by Robert Redstone | | B |
| 3 | Videos of the job taken after Sipes was terminated | | C |
| 4 | Advance for plumbing work not completed by Mr. Sipes | $3,000.00 | None |
| 5 | Troy Burton – bathroom plumbing rework/finish | $800.00 | D |
| 6 | Cory O'Con – painting | $200.00 | E |
| 7 | Ashley Rental & Sales, Inc. Saw rental for concrete removal | $98.67 | F |
| 8 | RVP Construction, Inc. Demo & Removal of concrete in bathroom | $700.00 | G |
| 9 | Custom-Bilt Cabinet & Supply, Inc. Materials for bathroom | $211.85 | H |
| 10 | McKinzie Drywall Finishing, LLC Tape, float and texture bathroom | $700.00 | I |
| 11 | Steven Vanholten Construction, LLC Closet trim-out including materials | $1,359.81 | J |
| 12 | Steven Vanholten Construction, LLC Bathroom trim-out including materials | $588.11 | K |
| 13 | Collins Painting Company Paint work per original contract | $2,415.00 | L |
| 14 | Caddo Paint Company, Inc. ½ of the paint purchased for the job | $595.49 | M |
| 15 | Custom-Bilt Cabinet & Supply, Inc. Metal Door for hallway | $839.31 | N |
| 16 | Around the House Construction, Inc. Invoice dated August 17, 2018 | $852.00 | O |
| 17 | Around the House Construction, Inc. Invoice dated August 28, 2018 | $1,981.00 | P |
| 18 | Around the House Construction, Inc. Invoice dated November 8, 2018 | $762.00 | Q |
| 19 | Custom-Bilt Cabinet & Supply, Inc. Materials | $1,986.48 | R |
| | TOTAL EXPENSES/REIMBURSEMENT | $17,089.72 | |

11